STUART F. DELERY
*Principal Deputy Assistant Attorney General*
JAMES G. TOUHEY, JR.
*Director, Torts Branch*
BRIDGET BAILEY LIPSCOMB (TN 016575)
*Senior Trial Counsel*
PAUL STERN (NJ 015832007)
*Trial Attorney*
DEEPTHY KISHORE (IL 6306338)
*Trial Attorney*
Department of Justice
Benjamin Franklin Station
P.O. Box 888
Washington, DC 20044
Telephone: 202-616-4448
Facsimile: 202-616-5200
e-mail: bridget.lipscomb@usdoj.gov
e-mail: paul.david.stern@usdoj.gov
e-mail: deepthy.c.kishore@usdoj.gov

Attorneys for the United States of America
        Defendant

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Jaycee and A. Dugard,<br><br>        Plaintiffs,<br><br>        vs.<br><br>United States of America, and<br>Does 1-50, inclusive,<br><br>        Defendants. | CASE NO. CV-11-4718-CTB<br><br>**UNITED STATES' MOTION TO DISMISS, FOR JUDGMENT ON THE PLEADINGS, OR FOR SUMMARY JUDGMENT**<br><br>Date:    September 5, 2013<br>Time:   10:00 a.m.<br>Crtrm.:  15, 18th Floor<br>Hon. Carlos T. Bea |

## UNITED STATES' MOTION TO DISMISS, FOR JUDGMENT ON THE PLEADINGS, OR FOR SUMMARY JUDGMENT

PLEASE TAKE NOTICE that Defendant United States of America, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(c), and 56, and Civ. L.R. 56 & 7, moves for dismissal, judgment on the pleadings, or summary judgment. The Motion should be granted for several independent reasons: (1) Plaintiffs' First Claim for Relief is jurisdictionally barred by the discretionary function exception of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680(a); (2) Plaintiffs' First, Second and Third Claims for Relief are barred because they arise from functions as to which the United States is entitled to absolute immunity, 28 U.S.C. § 2674; (3) the United States has not waived its sovereign immunity under the FTCA for Plaintiffs' claims because no private person or entity could be held liable in similar circumstances under California law, 28 U.S.C. §§ 1346(b), 2674; (4) Plaintiffs cannot carry their burden of proof as to causation under California law; (5) Plaintiffs' Second and Fourth Claims for Relief are barred by the FTCA's misrepresentation exception, 28 U.S.C. § 2680(h); (6) all of Plaintiffs' claims are "forever barred" because they were not timely presented to the appropriate federal agencies within two years of accrual as required by the FTCA's limitations provision, 28 U.S.C. § 2401(b); (7) Plaintiffs' claims alleging negligence on part of the Bureau of Prisons are barred because Plaintiffs failed to exhaust their administrative remedies as required by 28 U.S.C. § 2675(a); and (8) in any event, Plaintiff A. Dugard has not stated a valid cause of action because California law does not recognize the tort of wrongful life outside the medical malpractice context. A proposed order accompanies this Motion.

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

3

I.  THE DISCRETIONARY FUNCTION EXCEPTION BARS PLAINTIFFS' NEGLIGENT SUPERVISION CLAIM.  7

4

A. The U.S. Probation Officers' Decisions Regarding How to Supervise a Federal Parolee and Whether to Pursue Incarceration Involve the Exercise of Judgment and Choice. .................. 8

5

B. The U.S. Probation Officers' Decisions Regarding How to Supervise a Federal Parolee and Whether to Pursue Incarceration Are Susceptible to Policy Considerations. ....................... 19

6

II. THE UNITED STATES IS ENTITLED TO ABSOLUTE IMMUNITY FOR PLAINTIFFS' FIRST, SECOND, AND THIRD CLAIMS FOR RELIEF.................................................................................. 23

7

A. Judicial Immunities ................................................................................ 24

8

B. Plaintiffs' First Claim for Relief Challenges Acts for Which Garrido's Parole Officers Would Be Entitled to Absolute Immunity................................................................ 25

9

C. Plaintiffs' Second Claim for Relief Challenges an Administrative Act "Integral to" and "Part and Parcel of" the Commission's Parole Function. .................................................. 30

10

D. Plaintiffs' Third Claim for Relief Challenges the Adjudicatory Functions of Administrative Hearing Examiners.................................................................................. 31

11

III. PLAINTIFFS CANNOT PREVAIL AS A MATTER OF LAW BECAUSE CALIFORNIA LAW IMPOSES NO DUTY ON PRIVATE PERSONS UNDER SIMILAR CIRCUMSTANCES.................................................... 33

12

A. The United States Cannot Be Held Liable for the Criminal Acts of Garrido Because Garrido Was a Released Prisoner To Whom the United States Was Providing Rehabilitative Services. ...................................................................................... 36

13

14

B. California Law Recognizes No Duty of Care Under These Circumstances Because Plaintiffs Were Not Foreseeable and Readily Identifiable Victims of Garrido. .................................. 43

15

C. The United States Stood in No Special Relationship with Garrido Because the U.S. Probation Office, as the Agents of the U.S. Parole Commission, Lacked the Requisite Ability to Control Garrido.................................................................................. 45

16

17

IV. THE UNITED STATES IS ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFFS CANNOT CARRY THEIR BURDEN OF PROOF AS TO CAUSATION. .................................................... 49

18

A. Legal Standard................................................................................... 49

19

B. Plaintiff Cannot Carry Their Burden of Causation With Respect to Their First Claim........ 50

20

C. Plaintiff Cannot Carry Their Burden of Causation With Respect to Their Second, Third, or Fourth Claims.................................................................................... 60

21

V. PLAINTIFFS' SECOND AND FOURTH CLAIMS FOR RELIEF ARE BARRED BY THE MISREPRESENTATION EXCEPTION................................................................................ 61

22

23

VI. PLAINTIFFS' CLAIMS ARE "FOREVER TIME-BARRED" UNDER 28 U.S.C. § 2401(B)...................... 63

24

VII. PLAINTIFFS FAILED TO SATISFY THE EXHAUSTION REQUIREMENT OF 28 U.S.C. § 2675(A) WITH RESPECT TO THEIR SECOND AND THIRD CLAIMS FOR RELIEF........................................ 70

25

26

VIII. PLAINTIFF A. DUGARD FAILS TO STATE ANY INJURY COGNIZABLE UNDER CALIFORNIA LAW... 71

27

28

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

## Table of Authorities

**Cases**

*Acosta v. U.S. Marshals Serv.*,
  445 F.3d 509 (1st Cir. 2006) ........................................................................ (1st71

*Aguilar v. United States*,
  920 F.2d 1475 (9th Cir. 1990) ................................................................................ 34

*Alexandria S. v. Pac. Fertility Med. Ctr. Inc.*,
  55 Cal. App. 4th 110 (1997) ........................................................ 71, 72, 73, 74

*Alvarez-Machain v. United States*,
  107 F.3d 696 (9th Cir. 2002) .......................................................................... 68, 69

*Ames v. United States*,
  600 F.2d 183 (8th Cir. 1979) ................................................................................ 71

*Anderson v. Boyd*,
  714 F.2d 906 (9th Cir. 1983) .......................................................................... 24, 26

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) .............................................................................................. 7

*Anderson v. United States*,
  55 F.3d 1379 (9th Cir. 1995) ................................................................ 34, 36, 40

*Antoine v. Byers & Anderson, Inc.*,
  508 U.S. 429 (1993) .......................................................................................... 24, 25

*Anton v. Getty*,
  78 F.3d 393 (8th Cir. 1996) .......................................................................... 26, 30

*Aragon v. United States*,
  146 F.3d 819 (10th Cir. 1998) .............................................................................. 11

*Arbaugh v. Y&H Corp.*,
  546 U.S. 500 (2006) ............................................................................................ 5

*Bailey v. United States*,
  623 F.3d 855 (9th Cir. 2010) .............................................................................. 19

*Bailor v. Salvation Army*,
  51 F.3d 680 (7th Cir. .......................................................................................... 48

*Baker v. United States*,
  817 F.2d 560 (9th Cir. 1987) .......................................................................... 5, 33

*Basaloco-Lapo v. United States*,
  No. 89-15348, 1991 WL 172381 (9th Cir. 1991) ........................................ 48

*Beauchene v. Synanon Found., Inc.*,
  88 Cal. App. 3d 342 (1979) ................................................................ passim

*Berkovitz v. United States*,
  486 U.S. 531 (1988) .................................................................................... 8, 9, 23

*Bermudez v. Duenas*,
  936 F.2d 1064 (9th Cir. 1991) ............................................................................ 26

*Blackburn v. United States*,
  100 F.3d 1426 (9th Cir. 1996) ............................................................................ 12

*Block v. Neal*,
  460 U.S. 289 (1983) ............................................................................................ 62

*Broudy v. United States*,
　722 F.2d 566 (9th Cir. 1983) ......................................................................... 70
*Brown v. California Dep't of Corr.*,
　554 F.3d 747 (9th Cir. 2009) ......................................................................... 27
*Brown v. United States*,
　353 F.2d 578 (9th Cir. 1965) ......................................................................... 70
*Burkes v. Callion*,
　433 F.2d 318 (9th Cir. 1970), ....................................................................... 32
*Burns v. Reed*,
　500 U.S. 478 (1991) ...................................................................................... 24
*Butz v. Economou*,
　438 U.S. 478 (1978) ......................................................................... 24, 27, 32
*Cameron v. Janssen Bros. Nurseries, Ltd.*,
　7 F.3d 821 (9th Cir. 1993) ............................................................................ 34
*Cardenas v. Eggleston Youth Ctr.*,
　193 Cal. App. 3d 331 (1987) ............................................................ 36, 41, 58
*Celotex Corp. v. Catrett*,
　477 U.S. 317 (1986) ........................................................................................ 7
*Chavez v. United States*,
　683 F.3d 1102 (9th Cir. 2012) ......................................................................... 6
*Cimo v. INS*,
　16 F.3d 1039 (9th Cir. 1994) ........................................................................ 34
*Cleavinger v. Saxner*,
　474 U.S. 193 (1985) ...................................................................................... 24
*Cok v. Cosento*,
　876 F.2d 1 (1st Cir. 1989) ....................................................................... 29, 30
*Coleman v. Perrill*,
　845 F.2d 876 (9th Cir. 1988) ........................................................................ 13
*Coverdell v. Dep't of Social and Health Servs.*,
　834 F.2d 758 (9th Cir. 1987) .......................................................................... 7
*Curlender v. Bio-Science Labs.*,
　106 Cal. App. 3d 811 (1980) ......................................................................... 74
*Dalehite v. United States*,
　346 U.S. 15 (1993) ......................................................................................... 7
*Davis v. United States*,
　642 F.2d 328 (9th Cir. 1981), .................................................................. 64, 65
*Delta Sav. Bank v. United States*,
　265 F.3d 1017 (9th Cir. 2001) ...................................................................... 33
*Demoran v. Witt*,
　781 F.2d 155 (9th Cir. 1986) .................................................................. passim
*Dichter-Mad Family Partners LLP v. United States*,
　709 F.3d 749 (9th Cir. 2013) .................................................................. passim
*Doe v. Holy See*,
　557 F.3d 1066 (9th Cir. 2009) ...................................................................... 62
*Doggett v. United States*,
　875 F.2d 684 (9th Cir. 1989) ........................................................................ 34

*Dorman v. Higgins*,
  821 F.2d 133 (2d Cir. 1987) ............................................................................. 27

*Dyniewicz v. United States*,
  742 F.2d 484 (9th Cir. 1984) ..................................................... 63, 64, 65, 68

*Elvig v. Clavin Presbyterian Church*,
  375 F.3d 951 (9th Cir. 2004) .............................................................................. 6

*Erickson v. Curtis Inv. Co.*,
  432 N.W.2d 199 (Minn. Ct. App. 1988)........................................................... 42

*Ermoian v. Desert Hosp.*,
  152 Cal. App. 4th 475 (Cal. App. 2007)........................................................... 71

*FDIC v. Meyer*,
  510 U.S. 471 .......................................................................................................... 33

*Fernandez v. United States*,
  673 F.2d 269 ........................................................................................................ 66

*Fields v. Maceo*,
  51 F.3d 280 (9th Cir. 1995) .................................................. 26, 28, 29, 30

*Firebaugh Canal Water Dist. v. United States*,
  712 F.3d 1296 (9th Cir. 2013) .......................................................................... 34

*Fleming v. California*,
  34 Cal. App. 4th 1378 (1995).................................................................... 51, 52

*Fleming v. Pickard*,
  581 F.3d 922 (9th Cir. 2009) .............................................................................. 6

*Flemming v. Or. Parole Bd.*,
  73 F.3d 368 (9th Cir. 1995) ............................................................................... 32

*Foy v. Greenblott*,
  141 Cal. App. 3d 1 (1983) .................................................................................. 72

*Garza v. U.S. Bureau of Prisons*,
  284 F.3d 930 (8th Cir. 2002) ............................................................................ 65

*GATX/Airlog Co. v. United States*,
  286 F.3d 1168 (9th Cir. 2002) .......................................................................... 19

*Gen. Dynamics Corp. v. United States*,
  139 F.3d 1280 (9th Cir. 1998) ................................................................... passim

*Gibson v. United States*,
  781 F.2d 1334 (9th Cir. 1986) ........................................................ 64, 65, 66

*Giraldo v. Cal. Dep't of Corr. & Rehab.*,
  168 Cal. App. 4th 231 (2008) ........................................................................... 42

*Gleitman v. Cosgrove*,
  227 A.2d 689 (N.J. 1967) .................................................................................... 72

*Glenn v. United States*,
  231 F.2d 884 (9th Cir. 1956) ............................................................................ 68

*Gray v. Bell*,
  712 F.2d 490 (D.C. Cir. 1983).......................................................................... 17

*Hanas v. Inner City Christian Outreach, Inc.*,
  542 F. Supp. 2d 683 (E.D. Mich. 2008) ........................................................ 29

*Hensley v. United States*,
  531 F.3d 1052 (9th Cir. 2008) ..................................................................... 64, 65

*Herrerra-Diaz v. U.S. Dep't of the Navy,*
  845 F.2d 1534 (9th Cir. 1988) ........................................................................ 64

*Hiser v. Hickel,*
  100 F.3d 962 (9th Cir. 1996) ........................................................................... 26

*Hooks v. S. Cal. Permanente Med. Grp.,*
  107 Cal. App. 3d 435 (1980) .......................................................................... 44

*Hornbeck Offshore Transp., LLC v. United States,*
  569 F.3d 506 (D.C. Cir. 2009) .......................................................................... 5

*Horton v. Martin,*
  137 F. App'x 773 (6th Cir. 2005) .................................................................... 26

*In re Castillo,*
  297 F.3d 940 (9th Cir. 2002) ...................................................... 25, 26, 28, 31

*In re Consol. U.S. Atmospheric Testing Litig.,*
  820 F.2d 982 (9th Cir. 1987) ........................................................................... 71

*In re Glacier Bay,*
  71 F.3d 1447 (9th Cir. 1995) ..................................................................... 16, 51

*In re Oracle Corp.,*
  627 F.3d 376 (9th Cir. 2010) ............................................................................ 7

*In re Swine Flu Prods. Liab. Litig.,*
  764 F.2d 637 (9th Cir. 1985) ........................................................................... 64

*Indian Towing Co. v. United States,*
  350 U.S. 61 (1955) ........................................................................................... 34

*Irwin v. Dep't of Veterans Affairs,*
  498 U.S. 89 (1990) ........................................................................................... 68

*Johnson [v. State,*
  of Cal., 69 Cal. 2d 782 (1968) ........................................................................ 35

*Katsares v. Open Line Group Homes, Inc.,*
  No. C045057, 2004 WL 1466206 (Cal. Ct. App. June 30, 2004) ............................................. 40, 48

*Kennewick Irrigation Dist. v. United States,*
  880 F.2d 1018 (9th Cir. 1989) ................................................................... 16, 19

*King Cnty. v. Rasmussen,*
  299 F.3d 1077 (9th Cir. 2002) .......................................................................... 6

*Kokkonen v. Guardian Life Ins. Co.,*
  511 U.S. 375 (1994) .......................................................................................... 6

*Kontrick v. Ryan,*
  540 U.S. 443 (2004) .......................................................................................... 5

*LaBarge v. Cnty. of Mariposa,*
  798 F.2d 364 (9th Cir. 1986) ........................................................................... 39

*Landreth v. United States,*
  850 F.2d 532 (9th Cir. 1988) ..................................................................... 66, 70

*Lawrence v. United States,*
  340 F.3d 952 (9th Cir. 2003) ..................................................................... 62, 63

*Linkous v. United States,*
  142 F.3d 271 (5th Cir. 1998) ............................................................................ 5

*Louisiana v. Sparks,*
  978 F.2d 226 n.4 (5th Cir. 1992) .................................................................... 46

*Mann v. United States*,
   399 F.2d 672 (9th Cir. 1968) ............................................................. 70

*Marley v. United States*,
   567 F.3d 1030 (9th Cir. 2008) ........................................................... 68

*Martinez v. California*,
   444 U.S. 277 (1980)............................................................. 41, 58, 59

*Maupin v. Widling*,
   192 Cal. App. 3d 568 (1987) ........................................................ 50, 58

*McCarthy v. United States*,
   850 F.2d 558 (9th Cir. 1988) ............................................................... 5

*McMahon v. United States*,
   342 U.S. 25 (1951)........................................................................ 5, 39

*Megeff v. Doland*,
   123 Cal. App. 3d 251 (1981) ........................................................ 45, 48

*Meyers v. Morris*,
   810 F.2d 1437 (8th Cir.), .................................................................. 29

*Mid-Cal Nat'l Bank v. Fed. Reserve Bank of San*,
   Fran., 590 F.2d 761 (9th Cir. 1979)............................................... 35, 45

*Miller v. United States*,
   163 F.3d 591 (9th Cir. 1998) ............................................................. 12

*Minneci v. Pollard*,
   132 S. Ct. 617 (2012)........................................................................ 42

*Moore v. Brewster*,
   96 F.3d 1240 (9th Cir. 1996) ............................................................. 24

*Morrison v. Jones*,
   607 F.2d 1269 (9th Cir. 1979) ...................................................... 25, 26

*Mt. Homes, Inc. v. United States*,
    912 F.2d 352 (9th Cir. 1990) ............................................................ 62

*Myers v. United States*,
   652 F.3d 1021 (9th Cir. 2011) ............................................................. 9

*Olsen v. Idaho State Bd. of*,
   Med., 363 F.3d 916 (9th Cir. 2004) ..................................................... 6

*OPM v. Richmond*,
   496 U.S. 414 (1990).......................................................................... 61

*Oropeza v. Law Offices of Sanford M.*,
   No. A121047, 2009 WL 1878688 (Cal. Ct. App. 2009) ....................... 45

*Outman v. United States*,
   890 F.2d 1050 (9th Cir. 1989) ...................................................... 64, 65

*Patterson v. United States*,
   451 F.3d 268 (1st Cir. 2006)............................................................. 63

*Pedeferri v. Seidner Enter.*,
   216 Cal. App. 4th 359 (2013) ............................................................ 49

*People v. Heitzman*,
   886 P.2d 1229 (Cal. 1994)................................................................. 45

*Pittman v. United States*,
   341 F.2d 739 (9th Cir. 1973), ...................................................... 66, 70

*Proud v. United States*,
  723 F.2d 705 (9th Cir. 1984) ............................................................ 33
*Raven H. v. Gamette*,
  157 Cal. App. 4th 1017 (2007) .................................................... 49, 54
*Rayonier v. United States*,
  352 U.S. 315 (1957) ........................................................................ 33
*Reed v. U.S. Dep't of Interior*,
  231 F.3d 501 (9th Cir. 2000) .............................................................. 5
*Rice v. Ctr. Point, Inc.*,
  154 Cal. App. 4th 949 (2007) ..................................................... passim
*Richards v. Stanley*,
  271 P.2d 23 (Cal. 1954) ................................................................... 45
*Rodriguez v. Weprin*,
  116 F.3d 62 (2d Cir. 1997) .............................................................. 31
*Sabow v. United States*,
  93 F.3d 1445 (9th Cir. 1996) ........................................................... 12
*Saelzler v. Advanced Group 400*,
  23 P.3d 1143 (Cal. 2001) .......................................................... 56, 57
*Schaller v. State*,
  2011 WL 1202816 (Cal. Ct. App. 2011) .......................................... 44
*Schiff v. Dorsey*,
  877 F. Supp. 73 (D. Conn. 1994) ........................................... 27, 28, 29
*Scholar v. Pac. Bell*,
  963 F.2d 264 (9th Cir.1992) ........................................................... 68
*Seals v. Mitchell*,
  2007 WL 1795706 (N.D. Cal. June 20, 2007) ................................... 32
*Seattle Audubon Soc. v. Robertson*,
  931 F.2d 590 (9th Cir. 1991) ........................................................... 69
*Sellars v. Procunier*,
  641 F.2d 1295 (9th Cir. 1981) ......................................................... 26
*Semegan v. Weidner*,
  780 F.2d 727 (9th Cir. 1985) ............................................................. 7
*Sharma v. Stevas*,
  790 F.2d 1486 (9th Cir. 1986) ......................................................... 24
*Sharrock v. United States*,
  673 F.3d 1117 (9th Cir. 2012) ......................................................... 42
*Sigman v. United States*,
  217 F.3d 785 (9th Cir. 2000) ........................................................... 21
*Slagle v. United States*,
  612 F.2d 1157 (9th Cir. 1980) ......................................................... 71
*Sloan v. U.S. Dep't of Hous. and Urban Dev.*,
  236 F.3d 756 (D.C. Cir. 2001) .................................................... 17, 20
*Socop-Gonzalez v. INS*,
  272 F.3d 1176 (9th Cir. 2001) ......................................................... 68
*Stills v. Gratton*,
  55 Cal. App. 3d 698 (1976) ............................................................. 72

*Swift v. California,*
   384 F.3d 1184 (9th Cir. 2004) ........................................................... 26, 28

*Taggart v. State,*
   822 P.2d 243 ........................................................................................ 48

*Tarasoff v. Regents of the Univ. of Cal.,*
   17 Cal. 3d 425 (1976) ....................................................................... 45, 58

*Tekle v. United States,*
   511 F.3d 839 (9th Cir. 2007) ................................................................. 34

*Terbush v. United States,*
   516 F.3d 1125 ................................................................................... 12, 16

*Tritz v. U.S. Postal Serv.,*
   __ F.3d __, 2013 WL 3388487 (9th Cir. July 9, 2013) ......................... 23

*U.S. Dep't of Energy v. Ohio,*
   503 U.S. 607 (1992)............................................................................... 5

*United States v. Carter,*
   906 F.2d 1375 (9th Cir. 1990) ............................................................... 6

*United States v. Esparza,*
   552 F.3d 1088 (9th Cir. 2009) ............................................................. 21

*United States v. Gaubert,*
   499 U.S. 315 (1991)...................................................................... 8, 9, 13

*United States v. Kubrick,*
   444 U.S. 111 .................................................................. 5, 63, 64, 65

*United States v. Mitchell,*
   463 U.S. 206 (1983)........................................................................... 5, 31

*United States v. Neustadt,*
   366 U.S. 696 ................................................................................... 61, 63

*United States v. Olson,*
   546 U.S. 43 (2005)............................................................................ 34, 48

*United States v. Smith,*
   324 F.2d 622 ........................................................................................ 33

*United States v. Ursillo,*
   786 F.2d 66 (2d Cir. 1986) ................................................................... 13

*United States v. Varig Airlines,*
   467 U.S. 797 (1984)............................................................................... 7

*Vacek v. U.S. Postal Serv.,*
   447 F.3d 1248 (9th Cir. 2006) ............................................................. 70

*Valdez v. United States,*
   56 F.3d 1177 (9th Cir. 1995) ........................................................... 12, 13

*Viner v. Sweet,*
   70 P.3d 1046 (Cal. 2003) ................................................................. 49, 58

*Vu v. Singer Co.,*
   706 F.2d 1027 ...................................................................... 38, 39, 42, 44

*Wallace v. Christensen,*
   802 F.2d 1539 ................................................................................... 46, 47

*Washington v. United States,*
   769 F.2d 1436 (9th Cir. 1985) ........................................................... 64, 65

*Weissich v. United States,*
   4 F.3d 810 (9th Cir. 1993) ................................................................................. 10, 20, 23
*Whitcombe v. Cnty. of Yolo,*
   73 Cal. App. 3d 698 (1979) .............................................................................. 26, 42, 50
*Williams v. Consovoy,*
   333 F. Supp. 2d 297 ........................................................................................................ 32
*Wilson v. Kelkhoff,*
   86 F.3d 1438 ............................................................................................................ 25, 31
*Wilson v. United States,*
   959 F.2d 12 (2d Cir. 1992) ....................................................................................... 46, 47
*Wise v. Superior Court,*
   222 Cal. App. 3d 1008 (1990) .................................................................................. 45, 48
*Zavala v. United States,*
   876 F.2d 780 (9th Cir. 1989) ............................................................................... 66, 67, 70
*Zepeda v. Zepeda,*
   190 N.E.2d 849 (Ill.) ............................................................................................... 72, 74

**Statutes**

18 U.S.C. § 3603 ............................................................................................................... 10
18 U.S.C. § 4203 ............................................................................................................... 10
18 U.S.C. § 4203(b) ............................................................................................... 28, 43, 46
18 U.S.C. § 4210(b) ........................................................................................................... 27
18 U.S.C. § 4241 (1948) .............................................................................................. 31, 32
18 U.S.C. § 3655 ............................................................................................................... 10
18 U.S.C. §3651 ................................................................................................................ 10
28 U.S.C. §1346(b) ..................................................................................................... passim
28 U.S.C. § 2401(b) ............................................................................................... ii, x, 63
28 U.S.C. § 2674 ........................................................................................................ passim
28 U.S.C. § 2675(a) ................................................................................................ ii, x, 70
28 U.S.C. § 2680(a) .................................................................................................... passim
28 U.S.C. § 2680(h) .................................................................................................. ii, 61, 62

**Regulations**

28 C.F.R. § 2.20 ................................................................................................................ 55
28 C.F.R. § 2.21(a)(1) ....................................................................................................... 55
28 C.F.R. § 2.40(a)(12) ..................................................................................................... 47
28 C.F.R. § 2.42 ................................................................................................................ 15

# INTRODUCTION

The case is brought by Jaycee Dugard ("Jaycee") and her daughter, A. Dugard (collectively, "Plaintiffs"), under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b); §§ 2671 *et seq.* *See* ECF No. 65, 2d Am. Compl.  Jaycee was kidnapped by Phillip Garrido ("Garrido") on June 10, 1991, at the age of eleven.  Garrido took Jaycee more than 150 miles away from her neighborhood in South Lake Tahoe, California, to Antioch, California, where he resided with his wife and mother. Jaycee was not reunited with her family until August 2009.  Fifteen years before the reunification, Jaycee gave birth to a child fathered by Garrido, Plaintiff A. Dugard.

The question is not whether Plaintiffs suffered horrific experiences at the hands of Garrido.  Rather, the question is whether Congress's waiver of sovereign immunity can be interpreted so broadly as to expose the United States to far-flung liability for all harm suffered at the hands of federal parolees.  The supervision of such individuals entails difficult and complex judgments concerning how best to allocate scarce resources and balance the objectives of protecting the public's safety and promoting the rehabilitation of those who have been released from federal custody.  Imposing liability in these circumstances would make the United States the guarantor of the safety of every member of the public who might be harmed by a released offender under any kind of federal supervision.  The FTCA's limited waiver of sovereign immunity plainly does not go so far.

Plaintiffs bring four claims alleging the following acts or omissions:  (1) failure of the U.S. Probation Office to comply with its parole supervision duties, *see* First Claim for Relief, 2d Am. Compl. ¶¶ 54–58; (2) failure of the Bureau of Prisons to provide Garrido's entire parole file to the U.S. Parole Commission, *see* Second Claim for Relief, 2d Am. Compl. ¶¶ 59–64; (3) failure of the Bureau of Prisons to examine Garrido's mental state while he was still imprisoned, *see* Third Claim

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

for Relief, 2d Am. Compl. ¶¶ 65–70; (4) failure of the U.S. Probation Office to provide Garrido's

entire parole file to the state of California in 1999, *see* 2d Am. Compl. ¶¶ 71–77.[1]

Plaintiffs' claims are subject to dismissal on numerous independent grounds:  First, the

discretionary function exception bars Plaintiffs' negligent supervision claim.  The uncontroverted

evidence demonstrates that the U.S. Probation Officers had discretion over the supervisory functions

that form the basis of Plaintiffs' claim.  The Ninth Circuit, in fact, has held that probation

supervision decisions, due to their dynamic and ongoing assessment of risk and weighing of

conflicting policies, are protected by the discretionary function exception.  Decisions of the kind

that Plaintiffs contend should have been made—i.e., increasing the frequency of supervisory visits

or pursuing incarceration at subjectively determined stages in Garrido's drug rehabilitation—

involved elements of choice and would have entailed the weighing of costs, benefits, and

alternatives.  Further, the undisputed facts make it clear that the policies cited in Plaintiffs'

Complaint are neither mandatory nor meaningfully connected to their alleged injuries.

Second, the United States is entitled to invoke the absolute immunity of its employees

insofar as Plaintiffs challenge the U.S. Probation Officers' functions of gathering and reporting

information to the U.S. Parole Commission that could be considered in aggravation or mitigation of

Garrido's parole sentence, and of making recommendations to the Commission concerning the

continuation, modification, or termination of Garrido's parole.  When the U.S. Probation Officers

report facts or make recommendations "integral" to the Commission's decisions whether to

continue, modify, or terminate a parole sentence, they serve as the agents of an adjudicative body,

---

[1] In 1988, after serving eleven years of a federal sentence, Garrido was granted parole by the U.S. Parole Commission.  The Bureau of Prisons released him from custody that year, and the U.S. Probation Office supervised Garrido in accordance with the conditions of his parole imposed by the U.S. Parole Commission.  In 1999, the U.S. Parole Commission terminated Garrido's parole.  Because Garrido had been serving a concurrent state sentence, the state of California assumed responsibility for his parole supervision through 2009.

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

2

and their acts are part and parcel of the Commission's ongoing adjudicative decisions. Consequently, their functions are cloaked in absolute judicial immunity.  The United States also is entitled to absolute judicial immunity for Plaintiffs' second and third claims because they arise out of the judicial or quasi-judicial functions performed by officers of the Bureau of Prisons.

Third, the Court's jurisdiction under the FTCA turns on whether state substantive law would impose liability on a private person or entity in analogous circumstances.  California courts have squarely addressed whether private parties providing prisoner release and rehabilitation services owe a duty of care to members of the general public and have uniformly concluded that they do not.[2]  In addition, California does not adopt whole-cloth the common-law duty set forth in Restatement (Second) of Torts § 319; rather, California courts have imposed a duty to prevent the criminal conduct of another only where the defendant had a complete and unlimited ability to control the third party *and* where the victim was both foreseeable and readily identifiable.  Neither element was present here.

Fourth, Plaintiffs cannot carry their burden of proof as to causation for any of their negligence claims.  As a matter of California law, the discretion vested in the U.S. Parole Commission breaks the causal chain, regardless of whether the Commission in fact exercised that discretion.  In addition, there is no evidence that any alleged violations of parole supervision duties were a substantial factor in causing Jaycee's kidnapping.  Finally, California public policy precludes a finding of proximate cause under these circumstances.

Fifth, the FTCA's misrepresentation exception bars Plaintiffs' second and fourth claims because they arise out of a federal employee's alleged failure to communicate information. Specifically, Plaintiffs' second claim challenges the failure of the Bureau of Prisons to provide

---

[2] *See Beauchene v. Synanon Found., Inc.*, 88 Cal. App. 3d 342 (1979); *Cardenas v. Eggleston Youth Ctr.*, 193 Cal. App. 3d 331 (1987); *Rice v. Ctr. Point, Inc.*, 154 Cal. App. 4th 949 (2007).

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

sufficient information to the Commission, and the fourth claim challenges the failure of the U.S. Probation Office to provide sufficient information to the state of California.  These claims fall squarely within the misrepresentation exception and are thus barred.

Sixth, because Plaintiffs presented their administrative claims to the U.S. Parole Commission at least ten years after the latest date upon which their claims could have accrued, the Court lacks subject matter jurisdiction over any of Plaintiffs' claims.  The FTCA's two-year statute of limitations begins to run when a claimant first becomes aware of the physical cause of her injury. A parent's knowledge is imputed to a minor for purposes of determining the date of accrual of a minor's claim.  The uncontroverted facts show that Jaycee's mother was aware of sufficient information to trigger the accrual of Jaycee's claims by 1991, and that Jaycee herself was aware of sufficient information to trigger the accrual of both her own claims and A. Dugard's claims by the date that Jaycee reached the age of majority in 1998.  Thus, the claims that Jaycee has brought on behalf of herself and her daughter are forever time-barred.

Seventh, Plaintiffs failed to exhaust their administrative remedies before filing their Second and Third Claims for Relief, which allege acts or omissions by the Bureau of Prisons.  Plaintiffs never presented an administrative claim to the Bureau of Prisons, and the claim they presented to the U.S. Parole Commission makes no mention of the Bureau of Prisons' conduct as a potential basis for the United States' liability.

Finally, all claims of Plaintiff A. Dugard must be dismissed because she can demonstrate no cognizable injury under California law.  While A. Dugard attempts to base her claims on the fact of her mother's kidnapping before A. Dugard's birth, California law does not recognize the tort of wrongful life outside the context of medical malpractice claims.

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

## STANDARD

The Federal Tort Claims Act (FTCA) is a limited waiver of the United States' sovereign immunity for certain claims sounding in tort.  28 U.S.C. §§ 1346(b), 2671 *et seq.*; *United States v. Kubrick*, 444 U.S. 111, 117–18 (1979).  The United States is subject to suit only "to the extent that it has waived its sovereign immunity."  *Reed v. U.S. Dep't of Interior*, 231 F.3d 501, 504 (9th Cir. 2000).  Whether the United States has waived sovereign immunity for a particular type of suit is a question of subject matter jurisdiction.  *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988); *see also Reed*, 231 F.3d at 504; *Hornbeck Offshore Transp., LLC v. United States*, 569 F.3d 506, 512 (D.C. Cir. 2009) ("The extent of the waiver of sovereign immunity under the FTCA is coextensive with the district court's subject-matter jurisdiction to hear the case." (citation omitted)).

"It is axiomatic that the United States may not be sued without its consent and the existence of such consent is a prerequisite for jurisdiction."  *United States v. Mitchell*, 463 U.S. 206, 212 (1983).  Thus, "[t]he objection that a federal court lacks subject-matter jurisdiction . . . may be raised at any stage in the litigation, even after trial and the entry of judgment[.]"  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006) (citing *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)).  "A party bringing a cause of action against the federal government bears the burden of showing an unequivocal waiver of immunity."  *Baker v. United States*, 817 F.2d 560, 562 (9th Cir. 1987).  Waivers of sovereign immunity and any conditions on such waivers must be "construed strictly in favor of the sovereign."  *U.S. Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992) (quoting *McMahon v. United States*, 342 U.S. 25, 27 (1951)).  A court "must resolve all ambiguities in favor of the sovereign."  *Linkous v. United States*, 142 F.3d 271, 275 (5th Cir. 1998).

"[W]hen considering a motion to dismiss pursuant to Rule 12(b)(1), the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction."  *McCarthy v. United*

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

*States*, 850 F.2d 558, 560 (9th Cir. 1988).  Pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff has the burden to demonstrate that the court has subject matter jurisdiction over the claims. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).

A Rule 12(c) motion for judgment on the pleadings "is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009); *see also* Fed. R. Civ. P. 12(h)(2)(B) (permitting a motion for failure to state a claim upon which relief can be granted to be brought as a Rule 12(c) motion).  "Analysis under Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6) because, under both rules, 'a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy.'"  *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (quoting *Brooks v. Dunlop Mfg. Inc.*, No. C 10–04341 CRB, 2011 WL 6140912, at *3 (N.D. Cal. Dec. 9, 2011)); *see also Elvig v. Clavin Presbyterian Church*, 375 F.3d 951 (9th Cir. 2004) (noting that Rule 12(c) motions for judgment are brought after the filing of an answer).  When extrinsic evidence outside the pleadings is reviewed, the court effectively converts the Rule 12(c) motion into a Rule 56 summary judgment motion.  Fed. R. Civ. P. 12(d); *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 921–22 (9th Cir. 2004).

A party is entitled to summary judgment when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In deciding a motion for summary judgment, all evidentiary inferences are drawn in the light most favorable to the non-moving party, *see King Cnty. v. Rasmussen*, 299 F.3d 1077, 1083 (9th Cir. 2002), and the motion should be denied only if significant factual issues remain for trial.  *See United States v. Carter*, 906 F.2d 1375, 1376 (9th Cir. 1990).  Summary judgment is not merely a procedural shortcut but rather "an integral part of the Federal Rules as a whole, which are

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

designed 'to secure the just, speed, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1); *Semegan v. Weidner*, 780 F.2d 727, 732 (9th Cir. 1985).

Where the nonmoving party will bear the burden of proof at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the District Court—that there is an absence of evidence to support the nonmoving party's case." *Coverdell v. Dep't of Social and Health Servs.*, 834 F.2d 758, 769 (9th Cir. 1987). The burden then shifts to the nonmoving party to identify "specific facts showing that there is a genuine issue for trial." *Id.* (quoting *Celotex Corp.*, 477 U.S. at 324). "The non-moving party must show more than the mere existence of a scintilla of evidence." *In re Oracle Corp.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

## ARGUMENT

### I. THE DISCRETIONARY FUNCTION EXCEPTION BARS PLAINTIFFS' NEGLIGENT SUPERVISION CLAIM.

The United States argued in its Motion to Dismiss, ECF No. 10 (Nov. 18, 2011), that the FTCA's discretionary function exception bars Plaintiffs' claims.[3] The Court, construing Plaintiffs' allegations as true for purposes of the motion to dismiss, assumed that the U.S. Probation Office lacked discretion in performing duties relevant to Plaintiffs' negligent supervision claim. *See* ECF No. 23, Order Regarding U.S.' Mot. to Dismiss 14 (Apr. 5, 2012). Following discovery, however,

---

[3] The discretionary function exception, 28 U.S.C. § 2680(a), bars:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

The Supreme Court's construction of this exception is principally set forth in four cases: *United States v. Gaubert*, 499 U.S. 315 (1991); *Berkovitz v. United States*, 486 U.S. 531 (1988); *United States v. Varig Airlines*, 467 U.S. 797 (1984); and *Dalehite v. United States*, 346 U.S. 15 (1993).

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

Plaintiffs have not been able to adduce evidence that the U.S. Probation Officers breached a single mandatory directive relevant to the conduct upon which their claim is based. Rather, the uncontroverted evidence establishes that the U.S. Probation Office retained discretion in every manner relevant to Plaintiffs' claims. In addition, after the Court issued its April 2012 Order, *see* ECF No. 23, the U.S. Court of Appeals for the Ninth Circuit issued *Dichter-Mad Family Partners LLP v. United States*, 709 F.3d 749 (9th Cir. 2013), which affirmed that "when an actor with 'broad based discretion' . . . undertakes 'a totally separate exercise of discretion' that is independent of the underlying negligent act, all of the government's acts are immunized—including the earlier actions that may have violated mandatory duties." *Id.* at 750, App'x (adopting 707 F. Supp. 2d 1016, 1032, 1050, 1051 n.22 (C.D. Cal. 2010) (quoting *Gen. Dynamics Corp. v. United States*, 139 F.3d 1280, 1285 (9th Cir. 1998))). The evidence developed during discovery makes it clear that the Ninth Circuit's decision controls this case.

Plaintiffs' negligent supervision claim challenges the complex judgments made by U.S. Probation Officers about how best to allocate scarce resources while balancing the objectives of protecting the public's safety and promoting the rehabilitation of parolees. The Court lacks jurisdiction over Plaintiffs' claim because the claim is based upon conduct that was (1) discretionary and (2) "susceptible to policy analysis." *United States v. Gaubert*, 499 U.S. 315, 325 (1991). Negligence is irrelevant to discretionary function inquiry; the discretionary function exception applies *even where the discretion involved is abused*. 28 U.S.C. § 2680(a).

### A.  The U.S. Probation Officers' Decisions Regarding How to Supervise a Federal Parolee and Whether to Pursue Incarceration Involve the Exercise of Judgment and Choice.

At the first step of the discretionary function inquiry, the court must determine whether the challenged conduct involved an "element of judgment or choice." *Berkovitz v. United States*, 486 U.S. 531, 536–37 (1988). Discretion is removed only by "a 'federal statute, regulation, or policy

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

[that] specifically prescribes a course of action for an employee to follow,'" because in that circumstance the employee must follow the prescribed course. *Gaubert*, 499 U.S. at 322 (quoting *Berkovitz*, 486 U.S. at 536); *Myers v. United States*, 652 F.3d 1021, 1028 (9th Cir. 2011) (explaining that actions involve an element of judgment or choice unless there is a "statute or policy directing mandatory and specific action").

Plaintiffs claim that the supervisory decisions made by the U.S. Probation Office "did not serve to rehabilitate [Garrido]" but instead caused Plaintiffs' injuries because the officers failed to "take the necessary steps to ensure that [Garrido] would not offend again." *See* 2d Am. Compl. ¶ 56 ("Notwithstanding the dangerous and erratic behavior noted above, Defendant failed to properly supervise Garrido and take the necessary steps to ensure that he would not offend again.") ; *see also id.* ¶ 57 (alleging that "[b]ut for the Defendant's negligent failure to perform these and other duties," Garrido "would not have been free to kidnap Jaycee in 1991 or otherwise cause injury to Plaintiffs"). Plaintiffs further allege that Garrido's U.S. Probation Officers "failed to supervise Garrido adequately" and "ignored dozens of obvious warning signs," *id.* ¶ 42; failed to "report Garrido's drug and alcohol violations to the Parole Commission," *id.* ¶ 46; failed to conduct searches of Garrido's "backyard sheds," *id.* ¶ 49; and failed to make enough face-to-face contacts with Garrido, *id.* ¶¶ 50–51. Plaintiffs, however, have identified no specific and mandatory directive that constrains the parole officers' discretion in any relevant respect.

1.  The Applicable Statutes and Policies Granted the U.S. Probation Officers Discretion in Deciding How To Supervise Garrido and Whether to Pursue Incarceration.

A U.S. Probation Officer's supervision decisions are steeped in the discretionary policy regime established by the Federal Probation Act and the Sentencing Reform Act,[4] and in a federal

---

[4] In 1984, Congress replaced the Federal Probation Act with the Sentencing Reform Act of 1984, which was Chapter II of the Comprehensive Crime Control Act of 1984. *See* Pub. L. No. 98-473, §§ 211–212, 98 Stat. 1987 (1983). The new Act took effect on November 1, 1987. *See* Pub. L. No.

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

supervision guideline manual.  The Federal Probation Act, 18 U.S.C. §§ 3651–3656, and the

Sentencing Reform Act of 1984, 18 U.S.C. §§ 3603, 3655, authorized U.S. Probation Officers to

"use all suitable methods, not inconsistent with the conditions imposed by the court, to aid

probationers and to bring about improvements in their conduct and condition."  *Id.* § 3655.

Probation officers must "keep informed concerning the conduct and conditions of each probationer

under [their] supervision."  *Id.* § 3655.  In 1983, the Administrative Office of the U.S. Courts

published a guideline manual for the U.S. Probation Office entitled *The Supervision Process:*

*Publication 106* (hereinafter "Publication 106").  It contemplated that U.S. Probation Officers

should make independent policy judgments in their dual obligations to (1) protect the public and (2)

promote the rehabilitation of the parolee.  (Ex. A, Publication 106, at 21) ("A probation officer

occupies a unique position—responsible both for protecting the community and assisting the

offender.").[6]  The Ninth Circuit has held that a probation officer's supervision decisions, due to their

dynamic and ongoing nature and their fundamental basis in a policy-laden regime, are protected by

the discretionary function exception.  *See Weissich v. United States*, 4 F.3d 810, 81415 (9th Cir.

1993).

   The probation officer's duties are expanded to the federal parole population by 18 U.S.C. §

4203, which provides the U.S. Parole Commission with the power to request probation officers to

provide services deemed necessary for maintaining proper supervision of and assistance to parolees.

The U.S. Probation Office must take into account the purposes of parole when supervising parolees

---

98-473, § 235, 98 Stat. 1987, 2031 (1984), *amended by* Pub. L. No. 99-217, § 4, 99 Stat. 1728
(1987).  Beginning on that date, the section entitled "Duties of Probation Officers," 18 U.S.C. §
3655 (1982 & Supp. III 1985), was codified at 18 U.S.C. § 3603.  Sentencing Reform Act of 1984,
Pub. L. No. 98-473, § 212, 98 Stat. 1987, 2002 (1984); *see also id.* at 2001–04.

[6] In 1993, the Administrative Office of the U.S. Courts issued *Supervision of Federal Offenders:*
*Monograph 109*, which superseded Publication 106.  Plaintiffs cite provisions from Monograph 109
in their complaint.  *See* 2d Am. Compl. ¶ 56(b), (e).  However, because Jaycee was kidnapped
before Monograph 109 was published, any guidelines found therein are irrelevant to Plaintiffs'
assertion that the failure to perform mandatory duties caused their harms.

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

released by the Commission.  "These purposes which parole serves may at times conflict and at the very least are complicated in their administration by the lack of tools to accurately predict human behavior and judge human motivation."  H.Rep. No. 94-838, 1976 WL 13835 (1976).  Thus, the Commission balances many complex policies, including the protection of society and the fact that "[i]ncarceration is the most expensive of all of the alternative types of sentences available to the criminal justice system, as well as the most corrosive because it can destroy whatever family and community ties an offender may have which would be the foundation of his eventual return as a law-abiding citizen."  *Id.; see also* (Ex. A, Publication 106, at 2) ("As the interpreter of the . . . Parole Commission's terms and conditions of supervision, the probation officer must balance the protection of society with the reintegration of the offender into that society.").

> 2.   The Policies Cited in Plaintiffs' Complaint Do Not Constrain the Parole Officers' Discretion in Any Relevant Respect.

In an attempt to defeat the discretionary function exception, Plaintiffs cite scattershot provisions from the U.S. Parole Commission's Rules and Procedures Manual, *see* 2d Am. Compl. ¶ 56(a); from the notes, procedures, or appendices of that Manual, *see id.* ¶ 56(c), (f) & (g); and from Publication 106, *see id.* ¶ 56(d).  No provision cited by Plaintiffs, however, cabins the parole officers' discretion in any respect relevant to their claims.

First, the policies on which plaintiffs rely from Publication 106 supply no mandatory directives because the Administrative Office of the U.S. Courts "did not intend the manual[s] to be mandatory, but rather intended [them] as a guidance or advisory document."  *Aragon v. United States*, 146 F.3d 819, 824 (10th Cir. 1998).  *See, e.g.*, (Ex. A, Publication § 106) (explaining that parole officers are "interpreters" of the "Commission's terms and conditions of supervision").  The "guidelines promulgated by the [agency] in its . . . manual were meant to be followed at the discretion of [the agency's] officers in light of the specific circumstances surrounding a particular

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

investigation." *Sabow v. United States*, 93 F.3d 1445, 1452 (9th Cir. 1996).  For example, Plaintiffs

cite Publication 106 for the proposition that "Defendant was <u>required</u> to complete an initial

supervision plan for Garrido immediately upon his receipt for supervision and, in any event, no later

than 30 days thereafter."  2d Am. Compl. ¶56(d).  Nothing on the cited page suggests a mandatory

requirement; rather, the page states that "locally developed techniques may be used to assist the

probation officer in analyzing the individual case," and explains that supervision plans only "serve

as primary references for probation officers . . . in evaluating the effectiveness of supervision."  (Ex.

A, Publication 106, at 4).  Plaintiffs also allege that Publication 106 mandates a certain number of

minimum contacts with parolees.  2d. Am. Compl. ¶ 56(c).  However, the manual rejects any rigid

rule for minimum contacts, stating that the "the actual number of personal contacts between the

probation officer and offender is directly related to supervision problems delineated in the

supervision plan."  (Ex. A, Publication 106, at 4).  Plaintiffs' cited provisions set forth broad,

policy-laden goals attainable only by the exercise of discretion.  *See Miller v. United States*, 163

F.3d 591, 595 (9th Cir. 1998) (citing *Blackburn v. United States*, 100 F.3d 1426, 1429 (9th Cir.

1996) (holding that policy manuals mandating warnings necessarily involved discretion)); *id.* ("The

existence of some mandatory language does not eliminate discretion when the broader goals sought

to be achieved involve an element of discretion." (citing *Valdez v. United States*, 56 F.3d 1177,

1179 (9th Cir. 1995))); *Terbush v. United States*, 516 F.3d 1125, 1138–39 (9th Cir. 2008) ("This

wide-ranging policy manual is one of general application providing individual park managers with

broad policy guidelines . . . .").

Similarly, Plaintiffs' reliance on sections 2.40-13(c) and 2.42-02(b) from the notes and

procedures of the U.S. Parole Commission's 1989 Rules & Procedures Manual ("1989 U.S. Parole

Commission Manual"), *see* 2d Am. Compl. ¶ 56(f)–(g), and on the Manual's Appendix C, *see* 2d

Am. Compl. ¶ 56(c), is misplaced.  The U.S. Parole Commission made its intent clear that, unlike

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

the *regulations* found in the Manual, the *notes*, *procedures*, and *appendices* were not to be construed as mandatory by the Commission itself or by other "agencies which must coordinate their work with the Commission."[7]  As opposed to the regulations, the notes, procedures, and appendices provide only "unofficial commentary" and "aspirational" guidelines; they are "merely precatory," and are thus non-binding on the U.S. Probation Office.  *Coleman v. Perrill*, 845 F.2d 876, 879 (9th Cir. 1988) (finding that the notes and procedures governing sentencing of co-defendants were "among the [U.S. Parole Commission] Manual's aspirations, not among its requirements"); *United States v. Ursillo*, 786 F.2d 66, 72 (2d Cir. 1986) (explaining that in the "Notes and Procedures portion of the Parole Commission Manual," the "Commission provides unofficial commentary on the official Commission Regulations, which are codified at 28 C.F.R. § 2.1-2.63"); *see also Gaubert*, 499 U.S. at 324 (instructing courts to look at the requirements set forth by "established governmental policy" for purposes of the discretionary function inquiry); *Valdez*, 56 F.3d at 1179–80 (declining to credit agency employees' testimony that agency rules were mandatory when plain text of guidelines belied that interpretation; and concluding that the discretionary function exception applied).

But even if this Court were to find that the notes, procedures, and appendices of the Commission's Manual supply mandatory directives binding upon the U.S. Probation Office, the policies cited by Plaintiffs do not defeat application of the discretionary function exception because they are not sufficiently specific and, in any event, are not applicable to the conduct upon which Plaintiffs' claims are based.  The FTCA bars a plaintiff from bringing "[a]ny claim *based upon* . . . the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the government . . . ."  28 U.S.C. § 2680(a) (emphasis

---

[7] The Introduction to the Manual states: "The notes, procedures, and appendices in this manual are intended *only for the guidance* of Parole Commission personnel *and those agencies which must coordinate their work with the Commission*.  The notes, procedures, and appendices do not confer legal rights and are not intended for reliance by private persons."  (Ex. N, 1989 U.S. Parole Commission Manual, at 4) (emphasis added).

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

added).  The conduct upon which a claim is "based" is not dictated by Plaintiffs' own

characterization of their claims, but on the Court's independent analysis.  *Gen. Dynamics Corp.*, 139

F.3d at 1283 ("Courts are not required to, and should not, simply look at the surface of a complaint

for the purpose of ascertaining the true basis of an attack upon something the government has

done." (citations omitted)).

      The Ninth Circuit's recent decision in *Dichter-Mad Family Partners* controls.  *See* 709 F.3d

at 751.  There, the plaintiffs alleged that SEC investigators failed to comply with case management

procedures during their investigations of Bernie Madoff, including requirements to file certain case

reports and to consult the agency's computer database before beginning an investigation.  *Id.* App'x,

at 707 F. Supp. 2d at 1048.  According to the plaintiffs, if these procedures had been followed, the

plaintiffs would not have suffered their injuries.  *Id.* App'x, at 707 F. Supp. at 1046–47, 1049.  The

district court explained that "when an actor with 'broad based discretion' . . . undertakes 'a totally

separate exercise of discretion' that is independent of the underlying negligent act, all of the

government's acts are immunized—including the earlier actions that may have violated mandatory

duties."  *Id.* App'x, at 707 F. Supp. at 1032 (quoting *Gen. Dynamics Corp.*, 139 F.3d at 1285).  It

then concluded that "Plaintiffs were not harmed by the teams' failure to follow case-management

procedures" but were actually "harmed by the investigators' failure to discover the Madoff fraud

and publicize or prosecute it."  *Id.* App'x, at 707 F. Supp. at 1049–50.  Because the SEC

investigators' activities involved "broad-based" discretion, it mattered not whether the SEC

investigators had separately committed "non-discretionary violations of mandatory case-

management rules."  *Id.* App'x, at 707 F. Supp. at 1050.  Summarily affirming the ruling and

adopting the district court's opinion as its own, the Ninth Circuit emphasized that the only policies

relevant to the discretionary function inquiry are those that apply to the conduct that *actually

harmed* the plaintiff.  709 F.3d at 751 (citing *Gen. Dynamics Corp.* at 1286).

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

Here, too, the policies cited by Plaintiffs, *see* 2d Am. Compl. 56(a)–(g), "lack the causal relationship to the plaintiffs' alleged injuries required to establish jurisdiction."[8]  *Dichter–Mad Family Partners*, 709 F.3d at 751.  For purposes of the discretionary function inquiry, Plaintiffs' alleged harms "actually flow" from the U.S. Probation Officers' *affirmative* decisions *not to* seek Garrido's incarceration in the time before Jaycee's kidnapping *but to instead*: address any parole problems through "very close supervision" and "constant observation and coun[s]eling," rely on Garrido's counselor's assurances that she had "addressed [Garrido's] drug use incident," and, after Garrido's problems had been addressed "through regular counseling sessions and medication," to "continue the same mode of supervision."  (Ex. C, Case Reviews (Feb. 7, 1990), (Oct. 4, 1990) & (Jan. 9, 1991)).  Because such supervision decisions involved myriad acts of "broad-based" discretion, the question of whether the U.S. Probation Officers committed separate "non-discretionary violations of mandatory case-management rules" (such as the reporting of drug or alcohol infractions to the Commission), is irrelevant for purposes of the discretionary function inquiry.  *Id.* App'x, at 707 F. Supp. at 1050.

*Whether* and *when* to recommend incarceration based on a parolee's illegal drug use are purely discretionary decisions.  *See* (Ex. D, ███████ Dep. 119) ("Q. Okay. But at some point when [positive drug tests] accumulate enough, you will make a recommendation? A. Correct.  Q. What's the—what—what's the number where you start to make a—a recommendation? A. Oh, I'm sorry.

---

[8] For example, the only mandatory directive cited by Plaintiffs is 28 C.F.R. § 2.42.  *See* 2d Am. Compl. ¶ 56(a).  This regulation required parole officers to submit a supervision report to the Commission "after the completion of 24 months of continuous supervision and annually thereafter." 28 C.F.R. § 2.42.  The parole officers complied with this regulation at all times relevant to Plaintiffs' claim.  (Ex. I, Supervision Report).  But even if the parole officers had not complied with the regulation, the discretionary function exception applies because there is no meaningful connection between compliance with 28 C.F.R. § 2.42 and Plaintiffs' alleged injury.  *Dichter-Mad Family Partners*, 709 F.3d at 751.  Plaintiffs can adduce no evidence demonstrating that the alleged failure to submit annual supervision reports under 28 C.F.R. § 2.42—an allegation that in any event cannot be supported by the evidence with respect to any relevant time period—was causally connected to Garrido's 1991 kidnapping of Jaycee.

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

There's no set number.  And part of it isn't just the drug test.  You're also looking at the person's level of cooperation."); (Ex. E, 1990 Annual Report, at 18) ("Obviously, the probation office is not using the first positive urine test results to institute revocation proceedings.  We attempt to use incarceration as the last option, rather than the first, as long as a defendant is attempting to deal constructively with his problem."); *see also* (Ex. A, Publication 106, at 31) ("The abuser may undergo many relapses on the road to sobriety.").  Plaintiffs may not question the quality or sufficiency of Garrido's rehabilitative progress in drug treatment and mental health programs administered by the U.S. Probation Office.  Any such assessments could only be made by a person with "access to a great deal of information" about Garrido, and who could have "even more information if [he] had chosen to pursue it." *Gen. Dynamics Corp.*, 139 F.3d at 1285.  Indeed, in *Glacier Bay*, the Ninth Circuit explained that one relevant inquiry in determining whether the discretionary function applies is whether "*each person* taking an allegedly negligent action had discretion." *In re Glacier Bay*, 71 F.3d 1447, 1451 (9th Cir. 1995) (emphasis added); *Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018, 1025 (9th Cir. 1989) ("We must first consider whether the action is a matter of choice for *the acting employee.*" (emphasis added)).  Ultimately, whether to address a parolee's illegal drug use by randomizing drug testing, increasing counseling sessions, requiring attendance at Alcoholics Anonymous or Narcotics Anonymous meetings, requesting in-home confinement, requesting inpatient treatment, or, *as a last resort*, recommending revocation to the Commission, were decisions committed to the U.S. Probation Officers' discretion. (Ex. A, Publication 106, at 2) ("Alternatives to incarceration are considered first with revocation the decision of last resort.").  Plaintiffs' purported liability expert admits as much.[9]  (Ex. F, Storey Dep. 24:21–25:10, 26:11–28:24); *see also Terbush*, 516 F.3d at 1137 ("[T]he more fundamental defect

---

[9] The United States separately moves to exclude Robert W. Storey's expert testimony in this case on the grounds that his testimony fails satisfy the requirements of Fed. R. Evid. 702.  *See* ECF No. 103, U.S. Mot. in Limine to Preclude Robert W. Storey from Providing Expert Testimony (Aug. 1, 2013).

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

with Plaintiffs' argument is that the decision cannot be boiled down to a simple recognition of the existence of some hazard.  The entire process, including identifying hazards, determining which hazards require a warning, and determining how and when and where the warning should proceed involves discretion . . . [T]his process . . . implicates the NPS's broader policy mandates to balance access with conservation and safety."); *Sloan v. U.S. Dep't of Hous. and Urban Dev.*, 236 F.3d 756, 762 (D.C. Cir. 2001) ("[T]he sifting of evidence, the weighing of its significance, and the myriad other decisions made during investigations plainly involve elements of judgment and choice.").

Plaintiffs have not adduced a scintilla of evidence that compliance with the "small handful of [allegedly] mandatory procedural obligations" that they cite in their complaint would have prevented the harms of which they complain.  *Dichter-Mad Family Partners*, 707 F. Supp. 2d at 1048.  Based on the evidence in the record, the alleged breach of these provisions caused no injury distinct from the harm caused by the U.S. Probation Officers' discretionary decisions to continue their attempts to rehabilitate Garrido rather than recommend his incarceration.  *See Sloan*, 236 F.3d at 762 ("[T]he allegedly improper investigation . . . caused no injury 'distinct from the harm caused by the ultimate prosecution itself[.]'" (quoting *Gray v. Bell*, 712 F.2d 490, 515 (D.C. Cir. 1983))).  Plaintiffs' entire case hinges on the argument that the U.S. Probation Officers supervising Garrido should have recommended that Garrido be taken into custody.  (Ex. G, Getty Dep. 111:10–14) ("So that's all I'm basing this statement on is; if I had seen those files and been a regional commissioner, yes, I would have issued a warrant, *assuming that the probation officer and the case analyst had recommended I do so.*" (emphasis added)).  Plaintiffs' purported liability expert, in fact, gave the opinion that "the responsible probation officer *would have recommended* that the Commission issue a warrant" for Garrido's arrest.  (Ex. H, Storey Supplemental Report 9–10) (emphasis added).

To the extent that Plaintiffs argue that their harm "actually flows from" the U.S. Probation Officers' alleged breach of a mandatory directive, *see Gen. Dynamics Corp.*, 139 F.3d at 1286, the

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

Ninth Circuit's decision in *Dichter-Mad Family Partners* bars their claims for an additional or alternative reason. There, the court held that the discretionary function applied because the SEC's New York team of investigators "made an independent decision to close its investigation . . . . without bringing an enforcement action against Madoff," 709 F.3d at 751, App'x, 707 F. Supp. 2d at 1050, and this independent decision was not bound by the mandatory case-management rules that were alleged to have been violated. *See id.* App'x, 707 F. Supp. 2d at 1051. Significantly, the court declined to consider whether a team's failures to abide by various mandatory procedures deprived another team of information in a way that impacted its decision not to bring an enforcement action against Madoff. *Id.* App'x, 707 F. Supp. 2d at 1051 n.22 ("[I]t is inappropriate to consider the thoroughness or accuracy of an intervening exercise of 'broad based discretion.'" (quoting *Gen. Dynamics*, 139 F.3d at 1285)).

Here, too, the U.S. Parole Commission made an affirmative decision to continue Garrido's supervision only months before he kidnapped Jaycee. (Ex. B, Commission's 1991 Action on Garrido) (U.S. Parole Commission's Regional Commissioner noting that the "USPO is recommending <u>continue supervision</u>. This writer also recommends <u>continue supervision</u> . . .." (emphasis in original)). There is no serious dispute that the Commission's decisions to continue supervision rather than to revoke parole are matters of pure discretion in the hands of the U.S. Parole Commission. There is no dispute that the U.S. Parole Commission was not bound by any statute, regulation, policy, note, procedure, or appendix cited in Plaintiffs' complaint.[10] Therefore, it

---

[10] Although this Court previously held that the question of how the U.S. Parole Commission would have exercised its discretion is a question for the trier of fact, ECF No. 23, Order 9–10, as a matter of California law, there can be no proximate causation where a subsequent act of discretion is essential to a Plaintiffs' causation theory. *Fleming v. California*, 34 Cal. App. 4th 1378, 1383 (1995); *Whitcombe v. County of Yolo*, 73 Cal. App. 3d 698, 703 (1979). Although Garrido's hypothetical revocation is essential to Plaintiffs' causation theory, they have adduced no evidence that any mandatory directive constrained the U.S. Parole Commission's decisions whether to revoke or continue supervision under these circumstances. *See* discussion *infra* Part IV.

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

is "inappropriate to consider the thoroughness or accuracy" of the Commission's 1991 exercises of discretion.

In sum:  Even assuming that the provisions Plaintiffs cite were intended to supply mandatory directives (which they do not, because they are in any event "aspirational"), and even if Plaintiffs could prove that the U.S. Probation Officers failed to comply with those provisions, it would not matter because (1) no mandatory directive deprives a parole officer of his discretionary power to decide whether or when to recommend that Garrido be incarcerated or to request that a warrant be issued for his arrest, and, additionally or alternatively, (2) no provision cited by Plaintiffs constrained the U.S. Parole Commission's February 1991 decisions to "<u>continue supervision</u>."  *See* (Ex. B) (emphasis in original); *see also Dichter–Mad Family Partners*, 709 F.3d at 751 ("'Where, as here, the harm actually flows from the prosecutor's exercise of discretion, an attempt to recharacterize the action as something else must fail.'"(quoting *Gen. Dynamics. Corp. v. United States*, 139 F.3d 1280, 1286 (9th Cir. 1998))).  Plaintiffs may not circumvent the discretionary function exception by simply pleading around the true discretionary source of their injury.  *See Gen. Dynamics*, 139 F.3d at 1285.

> **B.     The U.S. Probation Officers' Decisions Regarding How to Supervise a Federal Parolee and Whether to Pursue Incarceration Are Susceptible to Policy Considerations.**

At the second step of the discretionary function inquiry, the Court must determine whether the judgment or choice at issue was "susceptible to policy analysis," making it the type of conduct that Congress intended to protect.  *GATX/Airlog Co. v. United States*, 286 F.3d 1168, 1174 (9th Cir. 2002).  It is not necessary for the United States to prove a conscious decision based on the policy analysis.  *Kennewick*, 880 F.2d at 1028.  It is enough that the choice is one to which a policy analysis may apply.  *Id.*; *Bailey v. United States*, 623 F.3d 855, 863 (9th Cir. 2010) ("[S]o long as a

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

decision involves even two competing interests, it is 'susceptible' to policy analysis and is thus protected by the discretionary function exception.").

There is a reason that Plaintiffs can identify no relevant mandatory and specific directive constraining the U.S. Probation Officers' conduct—the area of parole supervision is dependent on myriad discretionary acts grounded in often competing policy considerations, and thus does not lend itself to static rules. The "specific terms and conditions" of parole supervision are "related to the broader issue of the goals of sentencing. These goals range from protecting the public from further crime to providing the offender with needed education, vocational training, medical care, and other correctional treatment." (Ex. A, Publication 106, at 1). Because the goals of rehabilitation and protecting the public's safety may conflict, officer discretion in balancing them is inherent. *See Weissich*, 4 F.3d at 814. Further, there is "no meaningful way in which [any] allegedly negligent [supervision] acts could be considered apart from the totality" of the parole officers' supervisory decisions. *Sloan*, 236 F.3d at 761. For these very reasons, the Ninth Circuit has concluded that parole supervision decisions are protected by the discretionary function exception. *See Weissich*, 4 F.3d 810. In *Weissich*, like here, the plaintiffs contended that federal probation officers "negligently supervised" a probationer "by failing to carry out [the probation office's] own plan of supervision and failing to enforce the terms of [the probationer's] probation." *Id.* at 814. The court held that the discretionary function exception barred the negligent supervision claim because:

> [t]here was no fixed plan *per se*, but rather an evolving plan, the contours of which were shaped on an ongoing basis as the parole officers dealt with [the federal probationer]. Perhaps the officers should have decided to supervise [him] more closely. Perhaps . . . unannounced home visits might have been more appropriate. These are judgment calls, however. They are made by a probation officer in the context of balancing the policy considerations previously mentioned. As such, they are discretionary functions. . . . [The probation officers are] shielded from liability even if [they were] negligent in supervising [the probationer] while he was on federal probation.

*Id.* at 814–15.

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

As in *Weissich*, Garrido's parole officers relied on their experience to implement supervision strategies on a dynamic basis, re-prioritizing objectives as called for the individual circumstances. (Ex. A, Publication 106, at 12) ("[T]he probation officer formulates a plan for achieving those objectives.  The methods selected are based on considerations such as the nature of the problem, the abilities and expertise of the officer, the availability of effective community resources, the attitude of the offender, and the exercise of authority necessary to insure the offender's participation.").  For example, in 1989 Garrido's parole officer ranked Garrido's parole objectives in this order:  (1) compliance with supervision conditions, (2) counseling, (3) employment, (4) abstention from drugs, (5) domestic stability, and (6) abstention from alcohol.  (Ex. J, Classification & Initial Supervision Plan).  In January 1991, Garrido's drug and mental health treatment therapist, independent-contractor Barbara Majors, recommended based on his progress that he be tested less frequently for drug use.  (Ex. K, Monthly Treatment Report, DUG-PO 001422).  In 1994, Garrido's parole officer noted that Garrido was "cooperative in all aspects of his supervision," but nevertheless recommended continuing parole because Garrido had "serious mental health issues that need[ed] to be resolved."  (Ex. L, Supervision Report).  Such an ongoing assessment of risk was inherently discretionary because it necessitated dynamic responses based on experience, officer judgment, and policy balancing.  *Cf. Sigman v. United States,* 217 F.3d 785, 797 (9th Cir. 2000) (failure to warn individuals on Air Force Base about potentially dangerous serviceman was a discretionary function, because it "brought into play sensitive and competing policy considerations of protecting safety while preserving resources and preventing unwarranted alarm").

Just *how* to enforce the special conditions of Garrido's parole is also discretionary.  *See United States v. Esparza*, 552 F.3d 1088, 1091 (9th Cir. 2009) (stating that although the special condition "mandated participation in a treatment program of some sort, the decision whether Defendant would receive inpatient or outpatient treatment is left to the discretion of the probation

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

officer").  The undisputed facts show that Garrido's conditions of parole did not require the parole

officers to perform drug testing at all, let alone prescribe its frequency.  (Ex. O, Certificate of

Parole).  How to implement Garrido's drug aftercare special condition was left to the discretion of

his parole officers, who, on an ongoing basis, relied on judgment and experience when choosing the

appropriate treatment modality, deciding how much to rely on a therapist's recommendations, and

determining whether an offender presented an unreasonable risk to the community under the totality

of the offender's particular circumstances.  (Ex. F, Storey Dep. 14–15, 24:21–25:10, 26:11–28:24).

Such subjective assessments were grounded in regional policies and were dependent on available

resources.  (Ex. D, ███ Dep. 116–117:3) (testifying that "different offices have different

[practices]" regarding whether to take some action on a drug violation); (Ex. A, Publication 106, at

12) ("The methods selected are based on considerations such as . . . the availability of effective

community resources . . . ."); *cf.* (Ex. E, 1990 Annual Report, at 12) (As "one of the four pilot

districts to test the concept of decentralized budgeting," the U.S. Probation Office for the Northern

District of California had some ability to formulate any such drug rehabilitative services for parolees

in accordance with its budgetary "reprogramming.").

　　　　In addition to the individualized decisions made in accordance with each parolee's

supervision objectives, the U.S. Probation Officers made discretionary decisions about how best to

allocate scarce resources to supervise a large caseload of offenders who posed varying risks to the

public's safety.  For example, U.S. Probation Officer ███ testified that he supervised "80

high violent individuals; not 80 for ten years, but 80 every month for a period of ten years.  So it

literally means I had hundreds and maybe even over a thousand individuals that were convicted of

things like putting bombs on airplanes, of killing people, of being involved with the [M]afia, being

involved with motorcycle groups and—and doing heinous crimes in connection with that."  (Ex. M,

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

███ Dep. 96:21–97:8); *cf.* (Ex. A, Publication 106, at 22) ("Probation officers will not have the expertise or personal resources to adequately assist all offenders.).

The essence of Plaintiffs' claim is that the parole officers should have done a better job while supervising Garrido by ensuring his incarceration before he kidnapped Jaycee Dugard. The issue, however, is not whether the parole officers made the best choices, but whether they were constrained by mandates that were so specific that there was no room for judgment or choice. *Berkovitz*, 486 U.S. at 546; *Weissich*, 4 F.3d at 814. Making different decisions "to ensure that [Garrido] would not offend again" would have required the weighing of costs, benefits and alternatives. Thus, Plaintiffs' First Claim for Relief merely alleges *negligence*—i.e., an abuse of discretion in deciding how to proceed with Garrido's parole supervision. The lack of any meaningful connection between Plaintiffs' cited policies and the true source of their harms, the clear indication that the cited policies were not intended to bind the U.S. Probation Office but only to provide aspirational guidelines, and the existence of myriad acts of discretion performed within the policy-laden regime of parole supervision, all compel the conclusion that the discretionary function exception bars Plaintiffs' claim.

In short, what Plaintiffs attempt here is "not only an avoidance of the strictures of the discretionary function exception, but also nothing less than a direct assault on the whole citadel of [parole officer] discretion and the protection that discretion offers to" those who serve as the U.S. Parole Commission's agents to effectuate the Commission's purposes for parole. *Gen. Dynamics Corp.*, 139 F.3d at 1286.

## II.    THE UNITED STATES IS ENTITLED TO ABSOLUTE IMMUNITY FOR PLAINTIFFS' FIRST, SECOND, AND THIRD CLAIMS FOR RELIEF.

The United States is "entitled to assert any defense based upon judicial or legislative immunity which otherwise would have been available to the employee of the United States whose act or omission gave rise to the claim . . . ." 28 U.S.C. § 2674; *see also Tritz v. U.S. Postal Serv.*, __

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

F.3d __, 2013 WL 3388487 (9th Cir. July 9, 2013) (affirming dismissal of an FTCA claim challenging activities for which the district judge could assert judicial immunity if he were the named defendant).  Plaintiffs' First, Second, and Third Claims for Relief are barred by absolute immunity because they challenge quasi-judicial functions.  *See Moore v. Brewster*, 96 F.3d 1240, 1244 (9th Cir. 1996) ("The concern for the integrity of the judicial process that underlies the absolute immunity of judges is reflected in the extension of absolute immunity to certain others who perform functions closely associated with the judicial process."); *Sharma v. Stevas*, 790 F.2d 1486 (9th Cir. 1986) (affirming dismissal of an FTCA action on the ground that the clerk of the United States Supreme Court enjoyed absolute quasi-judicial immunity because "his challenged activities were an integral part of the judicial process").

A.    **Judicial Immunities**

The Supreme Court has "emphasized that an official derives the appropriate degree of immunity not from his or her administrative designation but by the function he or she performs." *Anderson v. Boyd*, 714 F.2d 906, 908 (9th Cir. 1983) (quoting *Butz v. Economou*, 438 U.S. 478 (1978)).  Non-judicial officers who have duties that are "functionally comparable" to those of judges, *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 436 (1993), or whose functions are "closely associated" with the judicial process are entitled to absolute immunity.  *Burns v. Reed*, 500 U.S. 478, 495 (1991) (Scalia, J., concurring in part and dissenting in part) (explaining that, at the common law, absolute judicial immunity extended to non-judicial officers for "all claims relating to the exercise of judicial functions"); *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985) (stating that the Supreme Court has extended absolute judicial immunity to those "who perform functions closely associated with the judicial process").  Courts have referred to the absolute immunity enjoyed by non-judicial officers as "quasi-judicial immunity."  *See Butz*, 438 U.S. at 511.  Significantly, a non-judicial officer's alleged *failure to perform* any duty—even a ministerial duty—that "was part of the

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

judicial process is also clothed with quasi-judicial immunity." *Morrison v. Jones*, 607 F.2d 1269, 1273 (9th Cir. 1979).

In determining whether a non-judicial officer is entitled to absolute immunity, a court must first examine the *nature* of the official function being challenged, rather than examine the act itself or the identity of the actor. *See In re Castillo*, 297 F.3d 940, 948 (9th Cir. 2002) (discussing the application of the functional approach under *Antoine*, 508 U.S. 429). In determining whether the challenged function is judicial in nature, the court "must focus on the 'ultimate act' rather than the constituent parts of the act." *In re Castillo*, 297 F.3d 940, 952 (9th Cir. 2002). Accordingly, the Ninth Circuit has extended absolute quasi-judicial immunity to non-judicial officers who perform even "purely administrative acts—acts which taken out of context would appear ministerial, but when viewed in context are actually a part of the judicial function." *Id.*; *see also Wilson v. Kelkhoff*, 86 F.3d 1438, 1444–45 (7th Cir. 1996) (explaining that quasi-judicial absolute immunity protects "not only actual decisions, but also those mundane, even mechanical tasks" if they are related to the judicial process).

### B.   Plaintiffs' First Claim for Relief Challenges Acts for Which Garrido's Parole Officers Would Be Entitled to Absolute Immunity.

Plaintiffs' First Claim for Relief is barred under 28 U.S.C. § 2680(a) because it is based upon discretionary decisions made by the U.S. Probation Officers while supervising Garrido, including the discretionary decisions not to recommend that Garrido be incarcerated or seek a warrant for his arrest. *See* discussion *supra* Part I. To the extent that Plaintiffs argue that their claim is not based upon any such independent supervisory decisions of the U.S. Probation Officers, but upon conduct "integral to the independent" decision-making processes of the U.S. Parole Commission, *see Demoran v. Witt*, 781 F.2d 155, 156, 157 (9th Cir. 1986), Plaintiffs' claim is barred by absolute immunity. Further, because the court's inquiry must focus on the *nature* of the

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

function at issue, even the alleged *failures* to perform acts integral to quasi-judicial functions of the Commission are entitled to absolute immunity.  *See Morrison v. Jones*, 607 F.2d 1269, 1273 (9th Cir. 1979); *In re Castillo*, 297 F.3d at 947–48.

Functions that are adjudicative in nature or are "closely associated with the judicial process" are entitled to absolute immunity.  *In re Castillo*, 297 F.3d at 952.  Parole boards are entitled to absolute immunity for decisions "to grant, deny, or revoke parole" because these adjudicative tasks are "functionally comparable" to tasks performed by judges.  *Sellars v. Procunier*, 641 F.2d 1295, 1303 (9th Cir. 1981); *cf. Whitcombe v. Cnty. of Yolo*, 73 Cal. App. 3d 698 (1979) ("Granting or revoking probation is within the discretion of the trial court.").  By extension, parole officers are entitled to absolute quasi-judicial immunity when performing "actions integral to [parole] decisions."  *Swift v. California*, 384 F.3d 1184, 1191 (9th Cir. 2004) (noting that parole officers are not automatically entitled to absolute immunity for all acts arising from parole supervision, but are entitled to absolute immunity for all acts that are themselves adjudicative or that are "integral to" parole decisions); *Fields v. Maceo*, 51 F.3d 280, *1 (9th Cir. 1995) (table op.) (absolute immunity extends to "individuals whose functions bear a close association to the judicial process"); *see also Bermudez v. Duenas*, 936 F.2d 1064, 1066 (9th Cir. 1991) (holding that *Sellars* immunity encompasses actions "taken when processing parole applications").  Thus, "[o]fficers whose duties include recommending or imposing parole conditions cannot be liable for the performance of those duties."  *Hiser v. Hickel*, 100 F.3d 962 (9th Cir. 1996) (table op.); *Anderson*, 714 F.2d at 909; *Horton v. Martin*, 137 F. App'x 773, 775 (6th Cir. 2005).

The Ninth Circuit has held that probation officers preparing presentence reports are entitled to absolute immunity for their function of "investigat[ing] and report[ing] to the court" information about the criminal defendant that "*may be considered either in aggravation or mitigation of the punishment*."  *Demoran*, 781 F.2d at 157 (emphasis in original); *see also Anton v. Getty*, 78 F.3d

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

393 (8th Cir. 1996) (holding that probation officers who "evaluate facts, draw legal conclusions, and make recommendations which play a significant part in a decisionmaking process" are entitled to absolute immunity).  Probation officers reporting information that may be used in consideration of a sentence "serve a function integral to the independent judicial process" and "act[] as an arm of the sentencing judge."  *Demoran*, 781 F.2d at 156, 157; *see also Dorman v. Higgins*, 821 F.2d 133, 136, 137 (2d Cir. 1987) (holding that probation officers act "as an arm of the court" when amassing and providing the court with enough information to meaningfully perform its sentencing obligations).  The sentencing judge's "need for complete and accurate information about an offender" makes it essential that his relationship with the probation officer "not be subject to harassing and vexatious litigation" by those "who are predictably unhappy about their sentences." *Schiff v. Dorsey*, 877 F. Supp. 73, 77 (D. Conn. 1994); *see Butz,* 438 U.S. at 512 (explaining that the purpose of absolute immunity is "to assure that [the officials] can perform their respective functions without harassment or intimidation").  Thus, absolute immunity is necessary where the prospect of damage liability would "seriously erode the officer's ability to carry out his independent fact-finding function and thereby impair the sentencing judge's ability to carry out his judicial duties." *Demoran*, 781 F.2d at 157.

"[P]arole decisions are a continuation of the sentencing process."  *Brown v. California Dep't of Corr.*, 554 F.3d 747, 750 (9th Cir. 2009).  The U.S. Parole Commission has jurisdiction over a federal parolee until the termination of his original sentence.  18 U.S.C. § 4210(b) ("[T]he jurisdiction of the Commission over the parolee shall terminate no later than the date of the expiration of the maximum term or terms for which he was sentenced."); *id.* § 4211(a) ("[T]he Commission may terminate supervision over a parolee prior to the termination of jurisdiction under section 4210").  The Commission's parole decisions were ongoing in nature:  "Two years after each

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

parolee's release on parole, and at least annually thereafter," the Commission was required by statute "to determine the need for continued supervision."  *Id.* § 4211(b).

By operation of former 18 U.S.C. § 4203(b) and 18 U.S.C. § 3655,[11] U.S. Probation Officers serve as the agents of the U.S. Parole Commission.  *See infra* notes 27–28.  As the agents of the Commission, U.S. Probation Officers serve roles integral to the Commission's statutory obligations to make ongoing parole decisions regarding a parolee's "need for continued supervision."  *See id.* § 4211(a)–(b).  The U.S. Probation Officers act as the "arm" of the Commission when they "investigate[] and report[]" information to the Commission that "'may be considered in aggravation or mitigation" of parole decisions, *see Demoran*, 781 F.2d at 157 (emphasis omitted), and when they make recommendations concerning whether to continue, modify, or terminate Garrido's parole.  Thus, the U.S. Probation Officers have a "unique ongoing relationship" with the Commission as they gather facts to assist the Commission with making adjudicative decisions.[12]  *Schiff*, 877 F.

_____

[11] Here, to evaluate each of the functions challenged by Plaintiffs' claims, it is necessary to review the framework of the relationship between the U.S. Parole Commission and the U.S. Probation Office during the time of Garrido's parole.  *See, e.g.*, *In re Castillo*, 297 F.3d at 949 (examining the "peculiar needs and purposes of bankruptcy proceedings" before identifying the particular functions at issue); *Swift v. California*, 384 F.3d 1184, 1191–93 (9th Cir. 2004) (examining parole officer statutory functions under California's system of parole); *Fields v. Maceo*, 51 F.3d 280, *1 (9th Cir. 1995) (table op.) ("The structure of Arizona law persuades us that this immunity should also extend to the submission of evidence at a probation modification hearing.").  Former 18 U.S.C. § 4203(b) vested the Commission with the power to "(1) grant or deny an application or recommendation to parole . . .; (2) impose reasonable conditions on an order granting parole; (3) modify or revoke an order paroling any eligible prisoner; and (4) request probation officers . . . and public or private agencies to perform such duties with respect to any parolee as the Commission deems necessary for maintaining proper supervision of and assistance to such parolees . . . ."  *Id.* § 4203(b).  Moreover, the U.S. Parole Commission may promulgate rules and regulations establishing guidelines "necessary to carry out a national parole policy."  *Id.* § 4203(a)(1).  U.S. Probation Officers, in turn, were to "perform such duties with respect to persons on parole as the United States Parole Commission shall request."  *Id.* § 3655.

[12] For example, pursuant to its statutory powers, the U.S. Parole Commission requested parole officers to periodically provide information and recommendations about the parolee in a written format established by the Commission.  (Ex. I, Supervision Report).  In these reports, parole officers were to supply information about a parolee's criminal history and information about any new arrests; make recommendations concerning early termination; and provide his assessment of

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

Supp. at 78.  Indeed, former U.S. Parole Commissioner Carol Getty testified that "the probation officers were essentially the eyes and ears of the Parole Commission."  (Ex. G, Getty Dep. 199:8–12); *see Schiff*, 877 F. Supp. at 78 ("The federal probation officer serves as the [Commission]'s eyes and ears not only during the presentencing phase, but also while the offender is serving his sentence of [parole].  The [Commission] must rely on the frank, unfiltered reports of the probation officer in order to monitor the offender's compliance with [its] own orders."); *see also Fields*, 51 F.3d 280 ("[I]n gathering facts relevant to Fields' probation modification motion . . ., [the probation officers] acted as an 'arm of the sentencing judge.'  These actions were not materially different from the statutorily-mandated preparation of a presentencing report previously held to be cloaked in absolute immunity." (quoting *Demoran*, 781 F.2d at 157) (citation omitted)); *Hanas v. Inner City Christian Outreach, Inc.*, 542 F. Supp. 2d 683, 698 (E.D. Mich. 2008) ("The Drug Court envisions ongoing monitoring of criminal defendants, requiring caseworkers . . . to make recommendations as to a defendant's progress in a particular rehabilitation program on an ongoing basis. . . . [A] caseworker, or a probation officer, has to be able to make recommendations to a judge without fear of litigation . . ."); *Meyers v. Morris*, 810 F.2d 1437, 1466–67 (8th Cir.), *cert. denied*, 108 S. Ct. 97, 98 (1987) (holding that guardians appointed by a family court to investigate alleged sexual abuse were absolutely immune from damage claims for their reports and recommendations given to the family court because such delegated functions were intimately related to the judicial process); *Cok v. Cosento*, 876 F.2d 1, 3 (1st Cir. 1989) (holding that the function of "gather[ing] information, prepar[ing] a report and mak[ing] a recommendation to the court regarding a custody disposition" is entitled to "absolute quasi-judicial immunity" where the persons performing those roles "*functioned as agents of the court*" (emphasis added)).

---

the parolee's overall risk.  *See id*.  The Commission used such information to determine whether to continue, modify, or terminate a parole sentence.  The periodization of such submissions provides one example of the unique characteristics of the parole officer's ongoing agency relationship with the Commission.

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

Here, U.S. Parole Commissioner ██████████ ordered that Garrido serve 14,325 days of parole beginning January 20, 1988.  (Ex. O, Certificate of Parole); (Ex. P, Order, Nov. 5, 1987). Commissioner ██████ imposed several special conditions on Garrido's parole, including a requirement to participate in drug aftercare treatment.  (Ex. O, Certificate of Parole).  Garrido was to remain under the U.S. Parole Commission's jurisdiction for the entirety of his parole sentence or until the Commission decided to terminate his parole.  (Ex. Q, Certificate of Early Termination).

The United States is entitled to absolute immunity insofar as Plaintiffs challenge the U.S. Probation Officers' roles of gathering and reporting facts to the U.S. Parole Commission that may be considered in aggravation or mitigation of Garrido's 14,325-day parole term or special conditions of Garrido's parole, and of making recommendations to the Commission concerning the continuation, modification, or termination of Garrido's parole.  *See* 2d Am. Compl. ¶ 56(a)–(g). The prospect of damage liability would erode the U.S. Probation Officers' ability to carry out their "duty to engage in impartial fact-gathering for the [Commission]," *Demoran*, 781 F.2d at 157, and to make "recommendations that were an important part of an ongoing evaluation of whether [parolees] had met the requirements for parole."  *Anton*, 78 F.3d at 396 n.5.  Consequently, when the U.S. Probation Officers gathered facts or made recommendations "integral" to the Commission's ongoing adjudicative determinations concerning Garrido's parole, their functions were cloaked in absolute immunity.  *See Fields*, 51 F.3d 280, at *2 (table op.); *Cok*, 876 F.2d at 3 (persons who "functioned as agents of the court" were entitled to absolute judicial immunity).

### C.    Plaintiffs' Second Claim for Relief Challenges an Administrative Act "Integral to" and "Part and Parcel of" the Commission's Parole Function.

Plaintiffs' contend that the U.S. Parole Commission did not consider Garrido's complete records when granting his parole due to the Bureau of Prison's alleged failure to provide the records upon the Commission's request.  2d Am. Compl. ¶¶ 61–63.  Plaintiffs' claim is barred by absolute

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

immunity because it challenges the Bureau of Prison's role in providing information about Garrido to the U.S. Parole Commission—an activity "inexorably connected with" and "part and parcel of" the ultimate act of the Commission's adjudication of whether to grant parole to Garrido.  *In re Castillo*, 297 F.3d 940, 951–52 (9th Cir. 2002) (quoting *Wilson v. Kelkhoff*, 86 F.3d 1438, 1444 (7th Cir. 1996)); *see id.* at 951–52 (9th Cir. 2002) (holding that allegations concerning the clerk's function of controlling the docket were barred by quasi-judicial absolute immunity because the "ultimate act" of "scheduling and convening [] an adjudicatory hearing" is a judicial function).

Because the Commission's ultimate act of making a parole decision based in part on Bureau of Prisons records is judicial in nature, it matters not whether the Bureau of Prisons altogether failed to provide records for purposes of the parole decision; absolute immunity extends as much to the alleged *failure* to perform a constituent administrative act as it does to the ultimate adjudicative act. *See In re Castillo*, 297 F.3d at 952 (holding that absolute immunity "extends to the giving—or failure to give—notice" of a hearing); *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997) (citing *Antoine*, 508, U.S. at 433–34 n.8)) (holding that court clerks enjoy quasi-judicial immunity for claims arising from the failure to perform administrative tasks if the tasks are "judicial in nature and an integral part of the judicial process").

### D.   Plaintiffs' Third Claim for Relief Challenges the Adjudicatory Functions of Administrative Hearing Examiners.

Plaintiffs contend that the United States should be held liable because it failed to examine Garrido upon his imprisonment, thus preventing the Attorney General from placing Garrido "in a mental institution for the remainder of his full federal prison sentence."  2d Am. Compl. ¶ 66–69. No evidence supports this claim.  Instead, Plaintiffs cite former 18 U.S.C. § 4241 (1948), which required that a board of examiners for each prison "examine any inmate . . . alleged to be insane or of unsound mind . . . ."  *Id.* § 4241.  The statute also charged the board of examiners with

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

"report[ing its] findings and the facts on which they are based to the attorney general," who could then "cause such prisoner to be removed to . . . [a] hospital . . . or to any other institution authorized . . . to receive insane persons."  *Id.* § 4241.

Plaintiffs' claim is barred by absolute immunity because their allegations challenge adjudicative functions performed by the Bureau of Prisons' administrative hearing examiners in assessing a prisoner's mental health and recommending whether to institutionalize him.  The Supreme Court has extended the protections of absolute judicial immunity to the judicial acts of administrative hearing examiners performing adjudicatory functions within federal agencies.  *Butz*, 438 U.S. at 514.; *see also Seals v. Mitchell*, 2007 WL 1795706, *2 (N.D. Cal. June 20, 2007) (holding that prosecutors making recommendations concerning a prisoner's mental competency are entitled to absolute immunity).  The Ninth Circuit has held that psychiatrists who prepare and submit medical reports for purposes of a judicial proceeding are afforded quasi-judicial immunity. *Burkes v. Callion*, 433 F.2d 318, 319 (9th Cir. 1970), *cert. denied*, 403 U.S. 908 (1971); *Williams v. Consovoy*, 333 F. Supp. 2d 297, 301–02 (D.N.J. 2004) ("[W]e hold that conducting a psychological assessment [of a prisoner] at the behest of the Parole Board is an adjudicative act that entitles a parole officer to absolute immunity.").  By operation of § 4241, the Attorney General was charged with the judicial function of determining whether to commit a prisoner to a mental institution based on the board of examiner's findings.  The board thus served the Attorney General "in a function virtually identical to a court-appointed psychiatrist," *Flemming v. Or. Parole Bd.*, 73 F.3d 368 (9th Cir. 1995) (table op.).  Because Plaintiffs challenge the board of examiners' statutory role of examining prisoners, making adjudicative findings, and assisting decision making about a prison sentence or commitment to a mental health hospital, their claim is barred by absolute immunity.

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

### III. PLAINTIFFS CANNOT PREVAIL AS A MATTER OF LAW BECAUSE CALIFORNIA LAW IMPOSES NO DUTY ON PRIVATE PERSONS UNDER SIMILAR CIRCUMSTANCES.

Under the FTCA, the United States has waived its sovereign immunity only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place[13] where the act or omission occurred."  28 U.S.C. §§ 1346(b), 2674 ("The United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances").  "[T]he FTCA specifically provides that the federal government's tort liability is co-extensive with that of a private individual under state law."  *Proud v. United States*, 723 F.2d 705, 706 (9th Cir. 1984).  Thus, a claim is actionable under the FTCA only where applicable state law "would impose liability on private persons or corporations under similar circumstances."[14]  *Rayonier v. United States*, 352 U.S. 315, 318 (1957); *Proud*, 723 F.2d at 707 (stating that the appropriate standard is "the tort liability of a similarly situated private individual").

---

[13] The Supreme Court has "consistently held that § 1346(b)'s reference to the 'law of the place' means law of the State—the source of substantive liability under the FTCA."  *FDIC v. Meyer*, 510 U.S. 471, 477–78 (1994).  There is no dispute that the law of California applies to this case.

[14] The issue of whether a federal statute, regulation, or policy sets forth a duty that defeats the discretionary function exception should not be confused with whether the failure to comply with that federal mandatory duty is actionable under the FTCA.  *See Baker v. United States*, 817 F.2d 560, 566 (9th Cir. 1987) ("Our holding that the plaintiffs' claims are not barred by § 2680(a) does not end the inquiry into whether [they] have established a cause of action.  Whether [they] have a claim against the government depends on whether a private person under like circumstances could be found liable in tort under applicable state law.").  Plaintiffs must establish, for each claim, a state-law duty applicable to private persons that is wholly independent of any federal statutes, regulations, or policies.  *Delta Sav. Bank v. United States*, 265 F.3d 1017, 1024 (9th Cir. 2001) ("The breach of a duty created by federal law is not, by itself, actionable under the FTCA."); *United States v. Smith*, 324 F.2d 622, 624–25 (5th Cir. 1963) (explaining that the FTCA's waiver of sovereign immunity cannot apply where "[t]he existence or nonexistence of the claim . . . depends entirely upon Federal statutes"); *see also Gray v. Dep't of Justice*, 275 F. App'x 679, 681–82 (9th Cir. 2008) (holding that a "bare assertion that a duty exists is not sufficient to sustain a negligence claim" under the FTCA).

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

In *United States v. Olson*, 546 U.S. 43 (2005), the Supreme Court reaffirmed that the proper

analogy under the "private person" standard of § 1346(b) is to "state-law liability of private entities,

not to that of public entities."[15]  *Id.* at 46 (citing *Indian Towing Co. v. United States*, 350 U.S. 61

(1955)).  "Even if the conduct entails uniquely governmental functions, the court is to examine the

liability of private persons in analogous situations."  *Tekle v. United States*, 511 F.3d 839, 852 (9th

Cir. 2007) (citing *Olson*, 546 U.S. at 46); *see, e.g.*, *Firebaugh Canal Water Dist. v. United States*,

712 F.3d 1296 (9th Cir. 2013) (searching for a "California case address[ing] the tort liability of

*private* water suppliers for the downslope effects of the water they provide" where the plaintiffs had

asserted trespass and nuisance claims based upon the Department of the Interior's alleged failure to

provide drainage to downslope lands); *Anderson v. United States*, 55 F.3d 1379, 1381 (9th Cir.

1995) (concluding that "what we must determine is whether a private person would be held liable in

California for his negligence in setting or controlling fires upon his land" where the plaintiffs had

alleged that the U.S. Forest Service negligently set, controlled, and suppressed a forest fire).

Plaintiffs' claims are not actionable under the FTCA because no private person or entity

could be held liable in similar circumstances under California law.  First, California courts have

emphasized that private parties providing prisoner release and rehabilitation services owe no duty of

care to members of the general public to prevent the criminal conduct of a third party under their

---

[15] The Supreme Court's holding in *Olson* abrogated a number of Ninth Circuit cases based on the premises that where uniquely governmental functions are at issue, the FTCA waives sovereign immunity if a state or municipal entity would be held liable under the law where the activity occurred; and that certain conduct amounts to uniquely governmental functions because no private-sector analogue exists.  *See United States v. Olson*, 546 U.S. 43, 44–45 (2005) (citing *Hines v. United States*, 60, F.3d 1441 (9th Cir. 1995); *Cimo v. INS*, 16 F.3d 1039 (9th Cir. 1994); *Cameron v. Janssen Bros. Nurseries, Ltd.*, 7 F.3d 821 (9th Cir. 1993); *Aguilar v. United States*, 920 F.2d 1475 (9th Cir. 1990); *Doggett v. United States*, 875 F.2d 684 (9th Cir. 1989).

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

supervision.[16]  In addition, to the extent that California courts have imposed any duty on a private party to prevent the criminal conduct of another, they have required not only that the defendant have a special relationship with the third party giving rise to an ability to control the third party,[17] but also that the plaintiff be a foreseeable and readily identifiable victim.[18]

Thus, for at least three independent reasons, California law recognizes no duty that could extend to Jaycee or her daughter, A. Dugard:  (1) When he kidnapped Jaycee, Garrido was a parolee to whom the United States was providing prisoner release and rehabilitation services; (2) neither Jaycee nor A. Dugard was a "foreseeable and readily identifiable" victim; and (3) the U.S. Probation Office lacked the requisite ability to control Garrido.

---

[16] *See Beauchene v. Synanon Found., Inc.*, 88 Cal. App. 3d 342 (1979); *Cardenas v. Eggleston Youth Ctr.*, 193 Cal. App. 3d 331 (1987); *Rice v. Ctr. Point, Inc.*, 154 Cal. App. 4th 949 (2007); *see also Vu v. Singer Co.*, 706 F.2d 1027 (9th Cir. 1983)).

[17] *Wise v. Superior Court*, 222 Cal. App. 3d 1008, 1013 (1990); *Megeff v. Doland*, 123 Cal. App. 3d 251, 261 (1981) ("It is fundamental that in order to take charge of a person in such a manner as will create a duty to control his conduct, one must possess the ability to control that person's conduct."); *Mid-Cal Nat'l Bank v. Fed. Reserve Bank of San Fran.*, 590 F.2d 761, 763 (9th Cir. 1979); *see also* cases cited *infra* note 26.

[18] *Schaller v. State*, 2011 WL 1202816, *8 (Cal. App. 2011) (quotations omitted) (citations omitted); *Megeff*, 123 Cal. App. 3d at 257 (citing *Tarasoff v. Regents of Univ. of Cal.*, 17 Cal. 3d 425 (1976)) (Even where a defendant has the ability to control the third person, the scope of the defendant's duty "is not necessarily one [extended] to the world at large; the element of foreseeability remains.  The custodian must have knowledge of a specific risk to an identifiable and foreseeable victim."); *Vu*, 706 F.2d at 1029 (explaining that under California law even where the defendant stands in a special relationship with the tortfeasor, the defendant has no duty of control extending to the victim where the victim was not both "foreseeable and specifically identifiable"); *Thompson v. Cnty. of Alameda*, 27 Cal. 3d 741, 758 (1980) (holding that any duty to control a released prisoner cannot extend to "a member of a large amorphous public group of potential targets"); *id.* at 755 ("Unlike members of the general public, in *Tarasoff* and *Johnson* [*v. State of Cal.*, 69 Cal. 2d 782, 797 (1968),] the potential victims were specifically known and designated individuals."); *Rice v. Ctr. Point, Inc.*, 154 Cal. App. 4th 949, 955 (2007) ("[T]he proximity of the park in which [the plaintiffs] were attacked to the HRC facility does not render plaintiffs identifiable or otherwise separate them from other members of the general public.").

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

**A.** **The United States Cannot Be Held Liable for the Criminal Acts of Garrido Because Garrido Was a Released Prisoner To Whom the United States Was Providing Rehabilitative Services.**

     1.    <u>Under California Law, Private Parties Providing Rehabilitative Services to Released Prisoners Owe No Duty to the General Public for the Tortious Acts of Dangerous Persons Under Their Supervision.</u>

California courts uniformly have held that a private party providing "prisoner release and rehabilitation" services to a probationer owes no duty of care toward members of the general public who are harmed by the probationer while under the private entity's supervision. *See Cardenas v. Eggleston Youth Ctr.*, 193 Cal. App. 3d 331 (1987); *Beauchene v. Synanon Found., Inc.*, 88 Cal. App. 3d 342 (1979); *Rice v. Ctr. Point, Inc.*, 154 Cal. App. 4th 949 (2007). The Ninth Circuit has explained that this line of cases "does not create a special exception [to the special relationship cases] by refusing to hold private rehabilitation programs liable; it merely follows the background rule that one is not usually responsible for the actions of another." *Anderson v. United States*, 55 F.3d 1379, 1382–83 (9th Cir. 1995).

In *Cardenas*, the plaintiff had been "brutally attacked" at a nearby convenience store by a resident who had been placed in the private facility "as a condition of probation." 193 Cal. App. 3d at 333. The residents of the facility were "free to come and go subject to certain restrictions." *Id.* Plaintiffs sued the facility for negligence, alleging, *inter alia*, that the resident was a "violent and unpredictable" person over whom the facility "failed to exercise the requisite control." *Id.* The court held that the facility owed no duty to the plaintiff, deferring to the "imperative policy objective of encouraging innovative release and rehabilitation programs for criminal offenders." *Id.* at 335.

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

*Beauchene*[19] involved a "private rehabilitation institution that provide[d] a structured or controlled environment for its residents," including "convicted persons" sent by the court in lieu of a jail or prison sentence. 88 Cal. App. 3d at 345. At issue was whether the facility could be held liable for the criminal conduct of a probationer who, as a condition of his probation, was prohibited from leaving the private rehabilitation facility without the permission of his probation officer. *Id.* at 345. The plaintiff, who was shot during a "crime spree that included the harming or killing of several people," sued based on a theory of negligence, arguing that "because of the special relationship that [the facility] undertook by accepting [the probationer] into its program," and because the facility knew of the risk the probationer posed to society, the facility had a duty to control the probationer's behavior so as to prevent him from escaping. *See id.* at 346–47. Balancing "the public interest in safety from violent assault[s]" against the "public policy favoring innovative criminal offender release and rehabilitation programs," the court held that that the facility owed no duty of care to the plaintiff. *Id.* at 348 (quotations omitted). The court emphasized that "[e]ach member of the general public who chances to come into contact with a parolee or probationer must risk that the rehabilitative effort will fail." *Id.* (citations omitted).

Similarly, in *Center Point*, inmates escaped from a private facility that had contracted with the California Department of Corrections to provide residential substance abuse treatment to the inmates as they "finish[ed] out the few remaining months of their sentences." *Ctr. Point, Inc.*, 154 Cal. App. 4th at 949, 953. The facility provided "a non-hospital 24-hour residential substance abuse program and also a special treatment program for criminal justice clients." *Id.* at 952 (internal quotations omitted). Plaintiffs, who were attacked in a nearby park, sued for negligence. The court held that it was "clear that defendants did not owe a duty to the plaintiffs," because "[s]uch a duty is imposed only where the injury is foreseeable and the intended victim is identifiable." *Id.* at 955.

---

[19] *Beauchene* was cited with approval by the California Supreme Court in *Thompson v. Cnty. of Alameda*, 27 Cal. 3d 741 (1980). It was relied upon by the Ninth Circuit in *Vu*, 706 F.2d at 1030.

U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.

The proximity of the park to the facility, moreover, did "not render plaintiffs identifiable or otherwise separate them from other members of the general public." *Id.* In addition, the court explained that "the public policy of encouraging rehabilitation of criminal offenders, the lack of foreseeability of injury to an identifiable person, and the fact that the risk of injury is shared by all members of the general public militate against the imposition of a duty." *Id.* at 958 (citations omitted). The court also recognized the state policy interest against imposing a duty where doing so would "in effect encourag[e] the detention of prisoners in disregard of their rights and society's needs." *Id.* at 956 (citations and quotations omitted).

Significantly, the Ninth Circuit has summarily held that, under California law, operators of federal programs aimed at the rehabilitation of former criminal offenders or drug users owe no duty of care to victims injured by the tortious acts of program members under the operator's supervision. *Vu v. Singer Co.*, 706 F.2d 1027, 1029–30 (9th Cir. 1983). In *Vu*, the Ninth Circuit extended *Beauchene* to a federal job corps program "designed to rehabilitate former criminal offenders, drug users and ghetto youths." *Id.* at 1030. There, several job corps members had burglarized the Vus' home and raped Mrs. Vu. *Id.* at 1028. The Vus sued the private contractor operating the federal program, alleging that he violated federal statutes and regulations "by failing previously to take disciplinary action against the corps members who later attacked Mrs. Vu . . . ." *Id.* The Ninth Circuit first affirmed the district court's conclusion that the federal statutes and regulations could not give rise to a state-law duty to control or supervise the corps members. *Id.* at 1028–29. It framed the remaining issue as "whether, under California law, Singer, as the operator of a Job Corps Center, owed the Vus a duty of care in the supervising of Job Corps members." *Id.* at 1028. Noting that California's public policy of encouraging innovations in criminal justice applies with equal force to private parties, the Court held that private operators of a federal job corps program have no

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

duty to prevent the tortious acts of corps members and therefore may not be held liable to the victims of such acts.  *Id.* at 1031.

2.     The *Beauchene* Line of Cases Provide the Most Persuasive Private Person Analogy to this Case.

Like the California private entities providing prisoner release and rehabilitation services, the United States, through its agencies, employees, and contractors, administered drug treatment and other rehabilitative services for recently released prisoners with known dangerous propensities.[20] (Ex. A, Publication 106, at 1) ("The decision to place a person on supervision, as well as the specific terms and conditions of that supervision, is related to . . . . the goals of sentencing[, which] range from protecting the public from further crime to providing the offender with needed education, vocational training, medical care, and other correctional treatment." ); *id.* at 33 (The goal of [drug] treatment is abstinence from illegal drug use and the reintegration of the offender into society as a law-abiding and contributing member. . . . In providing drug aftercare services for individuals under supervision the probation officer must provide services directly or act as a broker within the community to acquire the necessary resources.").  The U.S. Probation Office for the Northern District innovated drug treatment programs to respond to the growing need for effective treatment of parolees and probationers with substance abuse problems.  (Ex. E, 1990 Annual Report, at 16) ("In January of 1984, the district's Substance Abuse Program was inaugurated."); (Ex. E, 1990 Annual Report, at 18) ("Gone are the days when it was sufficient to merely know that a client used or abused illegal or prescription drugs, and to fashion a similar drug treatment for all.  To this end, the

---

[20] As the Ninth Circuit explained in *LaBarge v. Cnty. of Mariposa*, 798 F.2d 364 (9th Cir. 1986), "the federal government could never be exactly like a private actor . . . [Thus,] a court's job in applying the standard is to find the most reasonable analogy."  *Id.* at 367.  Therefore, the United States cannot be held liable even where the governmental conduct at issue presents "similar," but not identical, circumstances under which a private entity would be shielded from liability under state law.

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

Substance Abuse Specialists in the district have worked diligently to provide a comprehensive and meaningful program of intervention and treatment, irrespective of the drug of abuse.  The Northern District of California uses a multi-modality approach for a multi-dimensional problem.").

At all times relevant to Plaintiffs' claims, the United States provided rehabilitative services to Garrido, a former criminal offender and drug user whose participation in drug and mental health treatment services was required by order of the U.S. Parole Commission.  (Ex. O, Certificate of Parole); (Ex. R, Classification & Initial Supervision Plan).  The U.S. Probation Officers' supervision objectives for Garrido involved counseling, employment, abstention from drugs, domestic stability, and abstention from alcohol.  (Ex. R, Classification & Initial Supervision Plan).  Because Garrido was released to the community while under parole supervision, the analogy to the *Beauchene* line of cases is even more compelling:  "The conclusions reached in *Beauchene* and *Cardenas* apply with greater force" where "there are no physical barriers" constraining the person whose conduct needs to be controlled.  *Katsares v. Open Line Group Homes, Inc.*, No. C045057, 2004 WL 1466206, *4 (Cal. Ct. App. June 30, 2004).  California substantive law and Ninth Circuit precedent thus preclude liability under the FTCA.

3.    Federal and State Policy Considerations Militate Against Imposing a Duty on the United States Under These Circumstances.

The public policy considerations animating the *Beauchene* line of cases compel an identical analysis here.[21]  *See Beauchene*, 88 Cal. App. 3d at 348 ("[T]he same public policy that moved the Legislature to immunize *public* release and rehabilitation programs from liability—to encourage

---

[21] State policy considerations are a mandatory element of the duty analysis under California law governing private parties in similar circumstances.  In *Anderson v. United States*, 55 F.3d 1379 (9th Cir. 1995), the Ninth Circuit reiterated that "*Beauchene* decided that the public policy against assault, which dr[ives] the special relationship cases [in California], was overcome by the public policy favoring rehabilitation."  *Id.* at 1383.  The Seventh Circuit, applying Indiana tort law to an FTCA claim, has reached the same result on similar facts, relying not on state public policy but on Indiana's formulation of Restatement (Second) § 319.  *See Bailor v. Salvation Army, et al.*, 51 F.3d 678 (7th Cir. 1995).

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

such innovations in the interests of criminal justice—compels the conclusion that [defendant]'s *private* release and rehabilitation program owed no legal duty to this [plaintiff]." (emphasis in original)).  Both the United States Supreme Court and the Supreme Court of California have noted that "the basic risk that repeat offenses may occur is always present in any parole system." *Martinez v. California*, 444 U.S. 277, 281 (1980); *Thompson*, 27 Cal. 3d at 753 ("By their very nature parole and probation decisions are inherently imprecise.").  One inevitable consequence of prisoner release programs—public or private, federal or state—is that "[e]ach member of the general public who chances to come into contact with a parolee or probationer must risk that the rehabilitative effort will fail."  *Beauchene*, 88 Cal. App. 3d at 348.  Notwithstanding such risks, prisoner release programs "comprise an integral and continuing part in the correctional system" and serve the public "by rehabilitating substantial numbers of offenders and returning them to a productive position in society."  *Thompson*, 27 Cal. 3d at 753; *see id.* at 754 ("Obviously aware of the risk of failure of probation and parole programs the Legislature has nonetheless as a matter of public policy elected to continue those programs even though such risks must be borne by the public.").  Thus, federal parole officers "must balance the protection of society with the reintegration of the offender into that society.  [They] are responsible for making decisions which are of great consequence—whether a person is successfully responding to the conditions of supervision or, if not, making a recommendation for removal from society to incarceration.  The stakes are high."  (Ex. A, Publication 106, at 2).  "Forced to choose between the competing interests presented in this case, we must . . . without in the least minimizing the seriousness of the injury to the individual, defer to the imperative policy objective of encouraging innovative release and rehabilitation programs for criminal offenders."  *Cardenas*, 193 Cal. App. 3d at 335–36.

Under Plaintiffs' theory of liability the United States would be the guarantor of the safety of each and every California resident from the unlawful actions of every parolee or probationer

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

released from prison who is under any type or kind of federal supervision.[22]  Creating such an expansive duty on the part of the United States and extending it to every victim of a released prisoner's crimes would jeopardize federal programs for parole, probation, and supervised release by encouraging the detention of prisoners rather than their release into the California community.[23]  In addition, Plaintiffs' theory would impose upon federal programs a burden far more expansive than that imposed upon any private prisoner release and rehabilitation program in California, and in excess of the limited waiver of sovereign immunity contemplated by the FTCA.  *See Sharrock v. United States*, 673 F.3d 1117, 1122 (9th Cir. 2012) (rejecting the plaintiffs' theory of liability where it would impose upon the federal government "a burden far broader than that imposed upon any private employer, and in excess of the limited waiver contemplated by the FTCA").

Furthermore, a conclusion that the United States could be held liable for the criminal conduct of a parolee in its supervision while similarly situated private entities in California could

---

[22] During the January 2012 hearing on the United States' Motion to Dismiss, *see* ECF No. 17 (Transcript, at 6), the Court referenced *Minneci v. Pollard*, 132 S. Ct. 617 (2012), in which the U.S. Supreme Court considered the tort duty owed by jailers to their inmates for purposes of liability under § 1983.  In that case, the Supreme Court recognized that under California tort law, private operators of prisons owe a duty to their inmates to protect those inmates from foreseeable harm.  *Id.* at 624–25.  Under California law, any such duty of care owed by the jailer does not extend to the world at large, but only to the foreseeable and readily identifiable prison population; his duty to control, moreover, is limited to the prison population over whom the jailer has custodial control.  *See Giraldo v. Cal. Dep't of Corr. & Rehab.*, 168 Cal. App. 4th 231 (2008) ("[T]he relationship between [the jailer and the prisoner] *is protective by nature*, such that the jailer has control over the prisoner . . . ." (emphasis added)).  Due to the inmate's vulnerability and dependence on the jailer, and because, by nature of the custodial relationship, the inmates is "deprived of the normal opportunity to protect himself from harm inflicted by others," the jailer has a duty to protect the inmate from other inmates.  *Id.* at 250–51.

[23] *See Beauchene*, 88 Cal. App. 3d at 348 ("'Were we to find a cause of action stated we would in effect be encouraging the detention of prisoners in disregard of their rights and society's needs.'" (quoting *Whitcombe v. Cnty. of Yolo*, 73 Cal. App. 3d 698 (1977))); *Vu*, 706 F.2d at 1030 ("To impose on the operator of a [job corps] center a duty to prevent the tortious acts of corps members and to impose liability to the victims of such acts for having failed to do so would place in some degree of jeopardy the Job Corps program and its efforts toward the rehabilitation of disadvantaged young people."); *Erickson v. Curtis Inv. Co.*, 432 N.W.2d 199, 203 (Minn. Ct. App. 1988) ("Recidivism is unpredictable, and to impose liability for a 'mistake' would eliminate parole completely.").

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

not would lead to an incongruous result that Congress could not have intended when it authorized

the U.S. Parole Commission to "request probation officers . . . and public *or private agencies* to

perform such duties with respect to any parolee as the Commission deems necessary for maintaining

proper supervision of and assistance to such parolees . . . ."   18 U.S.C. § 4203(b) (emphasis added).

Under the statute, the Commission ostensibly could have contracted with a private agency like the

ones in *Beauchene*, *Cardenas*, *Center Point*, and *Vu* to provide the very same supervision, drug

treatment, or other rehabilitative services that it requested the federal probation officers to provide

to Garrido.  The United States should not be penalized for the Commission's discretionary choice in

this instance to use federal probation officers instead of a private agency.

> **B.    California Law Recognizes No Duty of Care Under These Circumstances
> Because Plaintiffs Were Not Foreseeable and Readily Identifiable Victims of
> Garrido.**

Plaintiffs' claims are not actionable for a second reason.  Under California law, the United

States "did not owe a duty to the [P]laintiffs as the foreseeable victims of [Garrido's] conduct.  Such

a duty is imposed only where the injury is foreseeable and the intended victim is identifiable."  *Ctr.*

*Point, Inc.*, 154 Cal. App. 4th at 955.  Plaintiffs previously argued that because California law in

*some* way recognizes or incorporates the Restatement (Second) of Torts § 319,[24] the United States

had a duty to control Garrido.  *See* Pls.' Opp. to U.S. Mot. to Dismiss 24–25, ECF No. 11 (Dec. 2,

2011).  The California Court of Appeal has criticized this very argument on the ground that it is

overbroad and contrary to California law[25]—California courts have specifically declined to adopt

---

[24] Restatement (Second) of Torts § 319 (1965), provides:

> One who takes charge of a third person whom he knows or should know to be likely to
> cause bodily harm to others if not controlled is under a duty to exercise reasonable care to
> control the third person to prevent him from doing such harm.

[25] The California Court of Appeal stated:

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

the "duty to control" as it is enunciated in the Restatement (Second) § 319, instead limiting any duty to control the criminal conduct of a third party to foreseeable and readily identifiable victims.  *See Schaller v. State*, 2011 WL 1202816, *8 (Cal. Ct. App. 2011).  Indeed, the Supreme Court of California has refused to impose "blanket liability" in the absence of a "foreseeable or readily identifiable target."  *Thompson*, 27 Cal. 3d at 752; *see id*. at 753 ("The *Tarasoff* decedent was the known and specifically foreseeable and identifiable victim of the patient's threats."); *Hooks v. S. Cal. Permanente Med. Grp.*, 107 Cal. App. 3d 435, 444 (1980) ("[O]ne must know that the target of the risk is an identifiable and foreseeable victim.").  The Ninth Circuit explained that California courts "have extended this need for foreseeable identification of the victim to cases involving the duty to control as well as the duty to warn."  *Vu*, 706 F.2d at 1029 (collecting authorities).

Here, it is undisputed that Jaycee was indistinguishable "from other members of the general public" before Garrido kidnapped her.  *See Ctr. Point, Inc.*, 154 Cal. App. 4th at 955.  There is no evidence to suggest that Garrido himself had met or even seen Jaycee before he kidnapped her, let alone that the United States could have readily identified her as Garrido's intended target.  Her daughter, Plaintiff A. Dugard was not even born until three years after Jaycee was kidnapped.  Neither plaintiff can be said to have been a "foreseeable and readily identifiable" victim of Garrido.  *See* cases cited *supra* note 18.

---

Plaintiffs rely on section 319 of Restatement Second of Torts, which sets forth a general rule . . . .  However, we agree with those courts that have held that the duty to control the criminal conduct of others as enunciated in section 319, is not necessarily one owed to the world at large; the element of foreseeability remains.  The custodian must have knowledge of a specific risk to an identifiable and foreseeable victim.

*Schaller v. State*, 2011 WL 1202816, *8 (Cal. Ct. App. 2011) (quotations omitted) (citations omitted).

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

**C.      The United States Stood in No Special Relationship with Garrido Because the U.S. Probation Office, as the Agents of the U.S. Parole Commission, Lacked the Requisite Ability to Control Garrido.**

The third independent reason that Plaintiffs' First Claim for Relief is not actionable under the FTCA is that the parole officers did not possess sufficient ability to control Garrido to create a "special relationship" under California.  "In the law of torts, as a general principle, one is under no legal duty to control another's conduct." *People v. Heitzman*, 886 P.2d 1229, 1243 (Cal. 1994); *Tarasoff v. Regents of the Univ. of Cal.*, 17 Cal. 3d 425, 435 (1976) (citations omitted); *Richards v. Stanley*, 271 P.2d 23 (Cal. 1954).  Courts have recognized an exception to this general rule where there is a "special relationship" between the defendant and the person whose conduct needs to be controlled.  *Heitzman*, 886 P.2d at 1243; *Tarasoff*, 17 Cal. 3d at 435.  Under California tort law, "the *ability to control* the third party is *essential*" to a special relationship.  *Wise v. Superior Court*, 222 Cal. App. 3d 1008, 1013 (1990) (double emphasis added).[26]  "When such ability does not exist, no duty arises, rendering inactionable a civil claim against a defendant for the failure to control the conduct of another."  *Heitzman*, 886 P.2d at 1244.  Although an ability to control can be inferred from certain relationships, it is a fact-specific inquiry and therefore "may be disproved by the circumstances surrounding a particular situation."  *Megeff v. Doland*, 123 Cal. App. 3d 251, 261 (1981).

---

[26] *See also Megeff*, 123 Cal. App. 3d at 261 ("It is fundamental that in order to take charge of a person in such a manner as will create a duty to control his conduct, one must possess the ability to control that person's conduct."); *Mid-Cal Nat'l Bank v. Fed. Reserve Bank of S.F.*, 590 F.2d 761, 763 (9th Cir. 1979) ("[T]he cases in which a duty of care has been grounded on a special relationship due to control over a third party generally concern *the ability of the controller* to protect the third party from physical harm by the controlled person." (emphasis added)); *People v. Heitzman*, 886 P.2d 1229, 1244 (Cal. 1994) ("[F]or one to 'take charge' of a person such that a legal duty to control his or her conduct is created, one must possess the *ability* to control." (emphasis in original)); *Oropeza v. Law Offices of Sanford M.*, No. A121047, 2009 WL 1878688, *5 (Cal. Ct. App. 2009) ("The facts as alleged . . . do not support a conclusion that Oropeza had taken charge of his son so as to bring a special relationship into play.").

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

When supervising federal parolees like Garrido, the U.S. Probation Officers acted as parole officers serving as the agents of the U.S. Parole Commission.[27]  Thus, the U.S. Probation Officers' ability to control Garrido's conduct was necessarily circumscribed by the authority granted to them by the Commission.[28]  As the agents of the Commission, the U.S. Probation Officers did not have the authority to "control" Garrido:  they could not revoke his parole sentence, impose parole conditions, or issue a warrant or summons.  There can be no dispute that any such measures of control were exclusive, non-delegable powers of the U.S. Parole Commission itself.[29]  Although U.S. Probation Officers could exercise their discretion to impose certain minor sanctions on Garrido, any measures that would restrict Garrido's freedom required approval of the U.S. Parole Commission.  (Ex. M, ███ Dep. 31:23–25) (explaining that parolees under his supervision were "under the control of the United States Parole Commission"); (Ex. F, Storey Dep. 110:3–17, 110:23–111:12) (explaining that any measures restricting a parolee's freedom required the U.S. Parole Commission's approval).  Thus, the U.S. Probation Officers could not make arrests, but could only recommend that the Commission issue an arrest warrant.  *Wilson v. United States*, 959 F.2d 12, 15 (2d Cir. 1992) *Wilson*, 959 F.2d at 15 ("Federal law and regulations do not vest parole officers with the power to make arrests.  Parole officers seeking to arrest parolees may only recommend that the [Commission] issue an arrest warrant." (citations omitted)).  In fact, even if the

---

[27] *See* (Ex. G, Getty Dep. 200:19–22) (former U.S. Parole Commissioner testifying that federal probation officers were "agents of the Parole Commission" when supervising federal parolees); 18 U.S.C. § 3655 (1982) (directing that U.S. Probation Officers must "perform such duties with respect to persons on parole as the United States Parole Commission shall request"); *Carson v. U.S. Dep't of Justice*, 631 F.2d 1008, 1009 n.5 (noting that "probation officers perform various duties as requested by the United States Parole Commission and thus are 'agents' of the Commission for some purposes, such as parole supervision or post-release planning"); *Louisiana v. Sparks*, 978 F.2d 226, 229 n.4 (5th Cir. 1992) (stating that a federal probation officer maintaining a parolee's files was acting as an "agent" of the U.S. Parole Commission under § 3655).

[28] *See* 18 U.S.C. § 3655 (authorizing U.S. Probation Officers to "perform such duties with respect to persons on parole as the United States Parole Commission shall request").

[29] *See* 18 U.S.C. § 4203(b); *Wallace v. Christensen*, 802 F.2d 1539, 1544–45 (9th Cir. 1986) (en banc).

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

Commission had issued a warrant for Garrido's arrest, the U.S. Probation Officer was not authorized to execute it.  *See id.*; (Ex. N, 1989 U.S. Parole Commission Manual, at Notes and Procedures, 28 C.F.R. § 2.38-03) (parole officers are "not authorized by the Commission to execute warrants").  U.S. Probation Officers acting as parole officers were not authorized to conduct searches.  (Ex. N, 1989 U.S. Parole Commission Manual, at Notes and Procedures, 28 C.F.R. § 2.38-03  (federal parole officers are "not authorized by the Commission to . . . make searches of a releasee's person or premises"); (Ex. D, ███ Dep. 29:1–3 ("Mr. Garrido did not have a search condition, so the inspection was limited to what's observed in plain view."); (Ex. D, ███ Dep. 9–10) ("[T]he parole commission did not authorize such searches with [Garrido's] case.").  In fact, even if Garrido's parole officers had observed contraband in plain view during a regular supervisory visit, they could not use force to seize any such evidence.  *Wilson*, 959 F.2d at 15 (citing 28 C.F.R. § 2.40(a)(12)) ("When observing contraband in plain view during a regular supervisory visit, a parole officer may seize evidence only with the parolee's consent.").

Plaintiffs' First Claim for Relief alleges no negligence on part of the U.S. Parole Commission, but instead alleges negligence on part of the U.S. Probation Officers in supervising Garrido at the request of the Commission.  Further, under the terms of their Stipulation and the Court's Order, Plaintiffs cannot "seek to impose liability against Defendant based on the conduct of the U.S. Parole Commission."[30]  Thus, any duty to control based on the Commission's non-delegable authority cannot be imputed to the U.S. Probation Office, and Plaintiffs' previous argument that "Defendant was in a special relationship with Garrido and 'took charge' of him

---

[30] Plaintiffs stipulated that the conduct of the U.S. Parole Commission shall not form the basis for their lawsuit against the United States, and the Court adopted their Stipulation as part of its Order entered on October 2, 2012.  *See* ECF No. 51 ¶ 1 & *id.* Ex. A, No.1; *see also* 2d Am. Compl. (alleging no negligence on part of the U.S. Parole Commission); ECF No. 53, U.S. Mot. to Strike, at 3–6.

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

within the meaning of section 319" is untenable.[31]   Plaintiffs cannot show that the United States owed them any duty recognized under California substantive tort law.  *See Megeff*, 123 Cal. App. 3d at 261 ("The uncontroverted facts establish that Charlotte Donald occupied no position of legal authority over her father's person."); *Wise*, 222 Cal. App. 3d at 1015–16 ("[A]bsent facts which clearly give rise to a legal duty, that responsibility should not be shifted to [the defendant]."); *Katsares*, 2004 WL 1466206, *4  ("The conclusions reached in *Beauchene* and *Cardenas* apply with greater force" where "there are no physical barriers" constraining the person whose conduct needs to be controlled."); *Megeff*, 123 Cal. App. 3d at 260–61 (holding that even where the defendant previously agreed to assume control of an insane person, she had no duty to control him where the uncontested facts showed that she was frequently physically absent from his home during the time he attacked the plaintiffs); *Wise*, 222 Cal. App. 3d 1008 (holding that the wife of a man described as a "human time bomb" with a history of aggressive behavior and who had an arsenal of firearms owed no duty to plaintiffs where she left the marital residence at least one week before his sniper attacks on passing motorists); *Basaloco-Lapo v. United States*, No. 89-15348, 1991 WL 172381, *1 (9th Cir. 1991) ("[T]he doctor was not in a position to control the solider or prevent the harm, nor did the doctor direct the solider to drive"); *Bailor*, 51 F.3d 680 (holding that halfway house had an insufficient ability to control a felon who was free to leave the facility "as long as he returned by 11:00 p.m., participated in a counseling program, and submitted to random drug testing").

---

[31] In opposition to the United States' Motion to Dismiss, Plaintiffs argued that "Defendant had the ability to regulate Garrido's movements within the State; to require him to report to his parole officer; to impose special conditions on him such as refraining from using alcohol, undergoing drug rehabilitation and obtaining psychiatric treatment; to subject him to random drug testing; and, importantly to actually take Garrido into custody if necessary."  ECF No. 11, Opp. to Mot. to Dismiss 23–24.  Plaintiffs relied on *Taggart v. State*, 822 P.2d 243, 219–20 (Wash. 1992), for the proposition that Garrido's parole officers had "taken charge" of him.  *Taggart* is inapposite because the ability of *state* parole officers to control state parolees under state parole statutes cannot form the basis for establishing the ability of a federal parole officer to control a federal parolee under California law for the simple reason that a state government employee is not the proper private party analogy under the FTCA.  *See Olson*, 546 U.S. 43.

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

**IV.    THE UNITED STATES IS ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFFS CANNOT CARRY THEIR BURDEN OF PROOF AS TO CAUSATION.**

As a matter of California law, Plaintiffs cannot carry their burden of proof as to causation because the discretion vested in the U.S. Parole Commission whether to revoke Garrido's parole necessarily breaks the causal chain, regardless of whether the Commission actually exercised that discretion.  In addition, there is no factual evidence to support the argument that the lack of reporting information to the U.S. Parole Commission was a substantial factor in causing Jaycee's kidnapping.  But even assuming Plaintiffs could prove that the non-reporting was a factual antecedent to the kidnapping, their causation theory is antithetical to California public policy.  The United States is entitled to summary judgment for any of these reasons.

**A.    Legal Standard**

Under California law, a causation analysis requires a two-step process.  First, plaintiffs must prove cause-in-fact.  Namely, the defendant's negligent conduct must have been a "substantial factor" in bringing about the harm.  *Viner v. Sweet*, 70 P.3d 1046, 1051 (Cal. 2003).  "[T]he actor's negligent conduct is *not a substantial factor* in bringing about the harm to another *if the harm would have been sustained even if the actor had not been negligent.*"  *Id.* (quoting Restatement (Second) of Torts § 432) (emphasis in original).  A substantial factor is "more than a remote or trivial factor."  *Raven H. v. Gamette*, 157 Cal. App. 4th 1017, 1025 (2007).  "Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct."  *Id.*

Second, plaintiffs must demonstrate that there are no "policy factors that may preclude imposition of liability."  *Viner*, 70 P.3d at 1048 n.1.  "Even when a defendant's negligence is the factual antecedent to the plaintiff's injury, courts may for policy reasons deem the chain of causation severed."  *Pedeferri v. Seidner Enter.*, 216 Cal. App. 4th 359, 373 (2013) (citations omitted).  The social policy calculation is a question of law and "asks the larger, more abstract

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

question: should the defendant be held responsible for negligently causing the plaintiff's injury?" *Maupin v. Widling*, 192 Cal. App. 3d 568, 573 (1987).

### B. Plaintiff Cannot Carry Their Burden of Causation With Respect to Their First Claim.

In their First Claim for Relief, Plaintiffs allege that Garrido's parole officers negligently supervised him and failed to report information about illegal drug or alcohol use to the U.S. Parole Commission.  With respect to causation, Plaintiffs argue, "But for Defendant's negligent failure to perform these and other duties as required by law and internal policies and procedures, Garrido's parole would have been revoked.  Garrido therefore would not have been free to kidnap Jaycee in 1991 or otherwise cause injury to Plaintiffs."  2d Am. Compl. ¶ 57.  This argument fails as a matter of fact and as a matter of law.

#### 1. Cause-in-Fact

Plaintiffs cannot satisfy the element of causation because the discretion of the U.S. Parole Commission as to whether to revoke Garrido's parole breaks the causal chain.  *Whitcombe v. Cnty. of Yolo*, 73 Cal. App. 3d 698 (1979) is directly on point.  In *Whitcombe*, a man was arrested for theft while on probation for a previous robbery.  His probation officer failed to report the theft to the court, which, in turn, may have revoked the man's parole.  Instead, the man assaulted the plaintiffs six days after he was released from custody.  The plaintiffs alleged that the assailant's probation officers failed to discharge their mandatory duties: "probation officers shall investigate alleged activities of their probationers which may violate the terms of their probation and report to the court any actual violations." *Id.* at 703 (quoting Cal. Penal Code sections 1203.10 and 1203.12).  The court held that even if the probation officers violated their mandatory duty to report violations, because the trial court is afforded discretion when revoking probation, any failure to report could not be the proximate cause of the plaintiffs' injury:

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

Granting or revoking probation is within the discretion of the trial court. While the court must consider a probation officer's report, it is not bound by that report and recommendation, or, indeed, the record of the case. Rather, "(i)t must be guided by considerations pertaining to psychology, sociology, and penology, or, in the words of the Code, to 'the ends of justice'. . . . In view of the latitude accorded the trial court, appellants' argument that defendants' alleged inaction in keeping and presenting reports about [the probationer] precluded the court from revoking [his] probation and thus proximately causing their injuries, is specious. Even had the court reviewed [his] record, it remained under no obligation to revoke probation. And if it had not, the proximate cause of appellants' injuries would, at best, be the court's considered decision.

Similarly, in *Fleming v. California*, 34 Cal. App. 4th 1378 (1995), the plaintiffs alleged that a parole officer's failure to arrest a parolee who violated conditions of his parole caused the rape and murder of the decedent. The plaintiffs argued that the parole officer breached his mandatory duty to arrest the parolee for leaving the state without permission. *Id.* at 1383. The court disagreed. It held that the decisions whether to arrest the parolee and how long he must be held after any arrest were discretionary acts. Because of these necessarily intervening discretionary acts, the plaintiffs could not establish proximate cause: "Here, the failure to arrest [the parolee] was not in itself a cause of the injury, since arrest without a period of incarceration would not necessarily have prevented the crime. Incarceration, however, would have involved procedural steps involving the exercise of discretion and thus have broken the causal chain." *Id.* at 1384; *see also In re Glacier Bay,* 71 F.3d 1447, 1451 (9th Cir. 1995) (cautioning that the presence of a discretionary final review might affect the merits of the plaintiffs' negligence claim because the plaintiff would be unable to show that the negligent acts proximately caused their harm); *Dichter-Mad Family Partners, LLP v. United States*, 707 F. Supp. 2d 1016, 1031 n.11 (C.D. Cal. 2010), *aff'd*, 709 F.3d 749 (9th Cir. 2010).

Here, several layers of discretion break the causal chain. First, the U.S. Probation Officers' reporting of Garrido's infractions would not automatically trigger revocation. The parole officer still had the discretion to decide whether to continue supervision or recommend incarceration for a

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

particular offense.  Second, and directly to the point under California law, it is the U.S. Parole

Commission that makes the discretionary determinations whether to issue a warrant upon the

request made by a U.S. Probation Officer, whether to commence revocation proceedings, and

whether to continue, modify, or revoke parole.  While the U.S. Parole Commission takes the parole

officer's reports and recommendations into consideration, it is not bound by them.  Rather, the U.S.

Parole Commission retains the discretion to determine the appropriate action based on a number of

policy considerations.  Thus, any failure to report Garrido's infractions could not be the proximate

cause Plaintiff's injuries, since the decisions of whether to revoke his parole and how long to

sentence him upon revocation would "involve[] procedural steps involving the exercise of discretion

and thus have broken the causal chain."  *Fleming*, 34 Cal. App. 4th at 1384.

These cases outlining California's proximate-cause jurisprudence are dispositive.  But in any

event, Plaintiffs cannot substantiate their assertion that, if the U.S. Probation Officers had reported

Garrido's infractions, the U.S. Parole Commission would have revoked his parole.  For example,

Dr. Carol Getty[32] did not testify that she would have revoked Garrido's parole based solely on the

unreported infractions.  Indeed, no evidence in the record supports the contention that the U.S.

Parole Commission would have revoked Garrido's parole if any parole infractions alone had been

reported.  Rather, Dr. Getty declared that she may have approved a warrant based on the unreported

violations *and* the recommendations of the probation officer and the case analyst.[33]  That accedence

---

[32] As an initial matter, Dr. Getty declined the Court's invitation to serve as a court-appointed expert. *See* ECF. No. 84, Order (March 5, 2013).  She therefore cannot offer opinion testimony regarding whether the U.S. Parole Commission would have revoked Garrido's parole.

[33] In her deposition, Dr. Getty testified, "So that's all I'm basing this statement on is; if I had seen those files and been a regional commissioner, yes, I would have issued a warrant, *assuming that probation officer and the case analyst had recommended I do so*." (Ex. G, Getty Dep. 111:10–14) (emphasis added).  Dr. Getty provided further qualifiers for her opinions: "If I had seen the violations that you have outlined to me, and I don't know that I would have seen them, but if I had seen those, if they had been reported to me and I was a regional commissioner, I think I would have revoked him. *But it would depend a lot on what the probation officer reported and what the case*

U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.

is critical because it underscores that, when drug infractions and other lesser offenses occur, the

United States Parole Commission considers a multitude of factors, including the recommendation of

the U.S. Probation Officers, who, in turn, are expected to take into account other information

available to them, including the recommendations of the parolee's mental health or drug treatment

therapists.  The decision of whether to pursue incarceration for drug infractions is a discretionary

function of the probation officer.  *See supra* Part I.  Thus, based on California law of causation,

Plaintiffs cannot argue that, but for the failure to report Garrido's parole violations, the U.S. Parole

Commission would have revoked Garrido's parole.  Rather, the discretionary recommendation of

the probation officer is what would have caused the U.S. Parole Commission to consider revocation.

Plaintiffs' purported expert further supports this conclusion.  In his supplemental report,

Robert Storey opines that "the responsible probation officer would have recommended that the

Commission issue a warrant" and that "a warrant would have been issued consistent with the

request." (Ex. H, Storey Supplemental Report 9–10).  As a threshold matter, Storey does not have

the requisite qualifications to offer opinions regarding the decisions of the U.S. Parole Commission.

*See* U.S.' Mot. in Limine No. 1 to Preclude Robert W. Storey from Providing Expert Testimony

(filed Aug. 1, 2013).  But even if the Court were to deem him an expert in the policies and practices

of the U.S. Parole Commission, Storey's expert report still does not help Plaintiffs' case.  Storey

does not give the opinion that the U.S. Parole Commission would have issued a warrant based solely

---

*analyst said to me*." (Ex. G, Getty Dep. 107:10–17) (emphasis added).  Dr. Getty continued by
further qualifying her answer: "I don't know.  Just I would like to state for the record that the first
sentence about I've reviewed various documents, I do not know that I reviewed all of the
documents, I don't know what documents I saw.  I don't know the totality of the documents.  So
had I seen other documents, I still think this is an accurate statement.  But what I'm trying to say is,
I don't know what I don't know. . . .  So there could have been a report in file from a probation
officer saying something to effect that Doctor Adams, whoever he was, had said he's on the road to
recovery, we're treating him, everything is absolutely wonderful.  So I don't know that that kind of
thing—so I don't know—I just want to state I don't know what I don't know." (Ex. G, Getty Dep.
109:25–110:17).

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

on the unreported violations.  Quite the opposite, he opines, "[i]n that over 25 year experience, I have concluded that the Commission nearly always follows the recommendation of the probation officer to issue a warrant.  Thus, on the occasions I have requested a warrant, the Commission has followed my recommendation and issued a warrant.  I understand based on Mr. ███████'s deposition testimony that his experience in the Northern District of California is similar to mine in this respect." [34]  (Ex. H, Storey Supplemental Report 11).  No expert opinion and no evidence in the record support the argument that the U.S. Parole Commission would have revoked Garrido's parole based solely upon the parole officer's reporting of Garrido's alleged parole violations.  Thus, Plaintiffs cannot carry their burden of showing that but for the failure to report Garrido's parole infractions, Garrido's parole would have been revoked.  There is simply no causal chain ascertainable from the evidence in the record.

　　　　　To prove cause-in-fact, it is insufficient for Plaintiffs to prove merely that, if the parole officer reported Garrido's parole infractions, the U.S. Parole Commission would have revoked Garrido's parole.  Plaintiffs must prove additional causal links to demonstrate that the kidnapping would not have occurred.  *See Raven H.*, 157 Cal. App. 4th at 1025.  Plaintiffs must demonstrate not only that the U.S. Parole Commission would have revoked Garrido's parole, but also that Garrido would not have kidnapped Jaycee Dugard upon being reparoled.  Plaintiffs cannot support their

---

[34] The fact that Storey gives the opinion that a "responsible probation officer would have recommend that the Commission issue a warrant" does not change the discretionary nature of that decision.  Indeed, throughout his deposition, Storey concedes that probation officers had wide discretion in deciding the appropriate sanction to dispense as a result of a violation.  *See* (Ex. F, Storey Dep. 114–5 ("We treat each person individually based upon their background, their current situation, all the information we get from a lot of different sources. . . .  the courts and the Parole Commission look at the parole officer, the probation officer to get that type of on-the-street detail information about an individual because all of it can't place placed [sic] on paper.  It's impossible."); *see also* (Ex. D, ███████ Dep. 119) ("Q. Okay.  But at some point when [positive drug tests] accumulate enough, you will make a recommendation? A. Correct.  Q. What's the – what – what's the number where you start to make a – a recommendation? A. Oh, I'm sorry.  There's no set number.  And part of it isn't just the drug test.  You're also looking at the person's level of cooperation.").

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

allegation that Garrido "would not have been free to kidnap Jaycee in 1991." 2d Am. Compl. ¶ 57. To the contrary, the evidence suggests Garrido would have been reparoled by June 10, 1991, the day he kidnapped Jaycee. (Ex. S, Husk Report 3). But even if he were incarcerated on June 10, 1991, there is no evidence to suggest that he would not have kidnapped her at a later date upon being reparoled.[35]

Having adduced no factual evidence to support their causation theory, Plaintiffs cannot now simply rely on the speculative and unsupportable opinions of Storey.[36] In his Supplemental Report, Storey asserts, "Once Garrido's parole was revoked based on his drug violations, he would not have been eligible for reparole for at least one year." (Ex. H, Storey Supplemental Report 16). The facts of the case belie that assertion. The reparole guidelines are set forth at 28 C.F.R. § 2.20. Because Garrido committed administrative violations only, the behavior would have been graded as Category One severity, and the reparole guidelines would have been 8 to 12 months. *See* 28 C.F.R. § 2.21(a)(1); *see also* (Ex. S, Husk Report 3). One year is the maximum sentence Garrido could have received, and Plaintiffs have adduced no evidence to indicate he would have received that sentence. In fact, when Garrido was incarcerated in 1993 for administrative violations, his sentence was significantly below the guideline: he was reincarcerated for one month. (Ex. T, Chron. Records); (Ex. U, Notice of Action). Given that Garrido's prior infractions were for administrative violations, there is no evidence suggesting he would not simply have received a similar sentence in 1989.

---

[35] Even if Garrido would not have kidnapped Jaycee if he was reparoled after June 10, 1991, there is no evidence suggesting he would not have simply abducted another unsuspecting child. The fact that Jaycee Dugard was no more of a foreseeable victim than any other female within a 180-mile radius further supports the United States' argument that it had no duty to this specific Plaintiff. *See supra* Part III(B).

[36] The purely speculative nature of Storey's opinions regarding the likely conduct of the Parole Commission only serves to underscore his lack of qualifications as an expert in that field.

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

Irrespective of the particular date when Garrido would have been reparoled, no evidence in the record suggests that he would not have kidnapped Jaycee at that time.  Plaintiffs may again attempt to rest on Storey's conjecture: "In the event Garrido was eventually reparoled, it is my opinion that he still would not have kidnapped Jaycee Dugard because he either (1) would have been in compliance with the conditions of his parole and, therefore, not have kidnapped her, or (2) would have been revoked once again for violating parole and, thus, unable to perpetrate the crime." (Ex. H, Storey Supplemental Report 16).

Such conjecture cannot supply the entire basis for Plaintiffs' causation argument.  "Proof of causation cannot be based on . . . an expert's opinion based on inferences, speculation, and conjecture."  *Saelzler v. Advanced Group 400*, 23 P.3d 1143, 1151 (Cal. 2001) (citation omitted).  In *Saelzler*, the Supreme Court of California affirmed the trial court's grant of summary judgment where the plaintiff's expert opinion was insufficient to create a triable issue of fact regarding causation.  23 P.3d 1143 (Cal. 2001).  There, the plaintiff brought a negligence action against the owners of an apartment complex to which she delivered packages for Federal Express.  She claimed that the owners failed to provide adequate security in the building and, as a result, she was sexually assaulted.  To support her claim, the plaintiff presented evidence that such an assault was foreseeable: the complex was in a high-crime area, defendants "received 41 reports of trespass, and 45 reports of occasions in which various perimeter fences and gate doors were broken or rendered inoperable," and previous criminal activity on the premises included "incidents of gunshots, robberies, and sexual harassment of women, including sexual assaults and rapes."  *Id.* at 1147.

The Court upheld summary judgment because it was mere speculation that the absence of added security caused the criminal activity: "Where, as here, there is evidence that the assault could have occurred even in the absence of the landlord's negligence, proof of causation cannot be based on mere speculation, conjecture, and inferences drawn from other inferences to reach a conclusion

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

unsupported by any real evidence, or on an expert's opinion based on inferences, speculation and conjecture." *Id.* at 1151. With respect to the plaintiff's expert opinion that plaintiff's injuries would have been avoided if the defendants increased security, the Court ruled that "the argument is entirely speculative, as assaults and other crimes can occur despite the maintenance of the highest level of security. . . . Despite her expert's speculation, plaintiff cannot show that roving guards would have encountered her assailants or prevented the attack." *Id.* at 1152. Quoting Professors Prosser and Keeton, the Court reasoned "[a] mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, *it becomes the duty of the court to direct a verdict for the defendant.*" *Id.* at 1151 (quoting Prosser & Keeton, Torts § 41 (5th ed. 1984)) (footnotes omitted) (emphasis added).

Here, Plaintiffs have no evidence to show that revocation would have prevented Garrido from kidnapping Jaycee. Even if on reparole the probation officer would have "increased the number of collateral contacts" and "allowed fewer (if any) excuses for non-compliance with the conditions of parole," (Ex. H, Storey Supplemental Report 17), it is pure speculation to conclude that such security measures would have thwarted Garrido's plan. To the contrary, the factual evidence in the record shows that on the same day he kidnapped Jaycee, Phillip Garrido appeared for and passed a drug test. (Ex. V, Monthly Treatment Report (June 1991)). The fact that he was compliant with the conditions of his parole on the very day he kidnapped Jaycee strongly suggests that no level of increased supervision would have prevented him from executing his perverted plan. To speculate that the aggressive supervision could have caused Garrido to "toe[] the line" is precisely the type of expert opinion the Supreme Court of California derided in *Saelzler* and ignores the undisputed facts in this case.

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

2. Public Policy Considerations

Even if Plaintiffs could prove that the U.S. Probation Officers failure to report Garrido's parole violations was the factual antecedent to the kidnapping, that breach was not the legal cause of Plaintiffs' injuries under California jurisprudence. Proximate cause examines "policy factors that may preclude imposition of liability." *Viner*, 70 P.3d at 1048 n.1.

California has determined as a matter of public policy that parole officers are entitled to immunity from "[a]ny injury resulting from . . . determining whether to revoke [] parole or release." Cal. Civ. Code § 845.8. The United States' liability must be assessed through duties imposed upon private persons in like circumstances. *See supra* Part III(A). California courts have held that private institutions providing prisoner release services are not liable to third-party victims because of the "imperative policy objective of encouraging innovative release and rehabilitation programs for criminal offenders." *Cardenas*, 193 Cal. App. 3d at 336; *see also Beauchene*, 88 Cal. App. 3d at 347 ("The questions of duty and proximate cause are sometimes the same."); *see generally Tarasoff*, 17 Cal. 3d at 444 n.18 ("The assertion of a cause of action against the police defendant under [Restatement Second of Torts (1965), section 321] would raise difficult problems of causation and of public policy . . . ."). Thus, the California legislature and courts have already grappled with the "larger, more abstract question," *Maupin*, 192 Cal. App. 3d at 573, and decided that probation officers should not be liable for injuries inflicted by parolees to third-party plaintiffs.

Moreover, the failure to report Garrido's positive drug tests and the kidnapping are too attenuated to establish proximate cause. In *Martinez v. California*, 444 U.S. 277 (1980), the State of California decided to parole a man previously convicted of rape after serving only five years of his 1-to-20-year sentence at a state mental hospital. The State was "fully informed about his history, his propensities, and the likelihood that he would commit another violent crime." *Id.* at 279. Five months after being released, the man tortured and killed another woman. *Id.* at 279–80. The United

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

States Supreme Court reasoned that the parole decision and the killing was "too remote" to hold the

State of California liable under § 1983:

> Her life was taken by the parolee five months after his release.  He was in no sense an agent of the parole board.  Further, the parole board was not aware that appellants' decedent, as distinguished from the public at large, faced any special danger.  We need not and do not decide that a parole officer could never be deemed to 'deprive' someone of life by action taken in connection with the release of a prisoner on parole.  But we do hold that at least under the particular circumstances of this parole decision, appellant's decedent's death is too remote a consequence of the parole officers' actions to hold them responsible under the federal civil rights law.

*Id*. at 285.

Jaycee's kidnapping was "too remote a consequence" of any failed reporting to establish

proximate cause.  That is particularly so in light of the fact that Garrido had not tested positive for

drugs in the 10 months prior to the kidnapping.  In fact, he had only tested positive one time in the

20 months leading up to the kidnapping.  (Ex. W, Chron. Record).  He tested negative for drug use

on the very day he kidnapped Jaycee.  Even if his alleged "urine diluting" were somehow

significant,[37] the last such occasion occurred in October 1990, eight months prior to the kidnapping.

(Ex. X, Monthly Treatment Report).  Thus, there was no correlation between Garrido's testing

positive for drugs and his kidnapping of Jaycee, let alone any evidence showing that his drug use

caused him to kidnap Jaycee.  The United States Probation Office should not be charged with

foreseeing criminal acts based on Garrido's drug tests, which in no way were accurate indicators of

his future criminal conduct.

---

[37] Parole officers were not required to report instances of low specific gravity levels in urine to the U.S. Parole Commission, even when the low level indicated that the parolee may have been "flushing" or "diluting" the urine specimen.  *See* (Ex. F, Storey Dep. 198:8–10) ("But this specific condition doesn't, as the manual doesn't, talk about specific gravity levels."); (Ex. Y, Husk Dep. 400:17) ("Q. Are you aware of any Parole Commission guideline that required the reporting of watered-down urinalysis? A. No.").

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

**C.      Plaintiff Cannot Carry Their Burden of Causation With Respect to Their Second, Third, or Fourth Claims.**

Plaintiffs have failed to adduce any evidence to substantiate their causation theory with respect to their additional claims.  In their Second Claim for Relief, Plaintiffs allege that the Bureau of Prisons failed to provide Garrido's entire parole file to the U.S. Parole Commission.  In terms of causation, Plaintiffs contend, "Had Defendant not breached its mandatory non-discretionary duties as described above, Garrido would not have been granted early parole and would not have been free to kidnap Jaycee in 1991 or otherwise cause injury to Plaintiffs."  2d Am. Compl. ¶ 63.  Plaintiffs have not identified any mandatory non-discretionary duty of the Bureau of Prisons to provide Garrido's *entire* parole file to the U.S. Parole Commission.  Further, there is no evidence indicating that the Bureau of Prisons did not produce its file to the U.S. Parole Commission.  But even if the file were not produced, there is no evidence to suggest that Garrido would not have been granted early parole had his entire parole file been provided to the U.S. Parole Commission.

In their Third Claim for Relief, Plaintiffs allege that the United States failed to examine Garrido's mental state while he was incarcerated.  Plaintiffs assert, "Had Defendant performed this non-discretionary duty as described above, Garrido would have been placed in a mental institution for the remainder of his full federal prison sentence and would not have been free to kidnap Jaycee in 1991 or otherwise cause injury to Plaintiffs."  2d Am. Compl. ¶ 69.  The record indicates that Garrido's mental health was evaluated twice in connection with his insanity defense and on one additional occasion while he was incarcerated.  (Ex. Z, Order for Mental Health Exam); (Ex. AA, Direct Examination of Kuhn); (Ex. BB, Direct Examination of Gerow); (Ex. CC, Trial Mem.); (Ex. DD, Psychological Evaluation).  Nonetheless, no evidence supports Plaintiffs' causation theory that Garrido would have been placed in a mental institution for the remainder of his full federal prison sentence had any additional examination been conducted.

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

In their Fourth Claim for Relief, Plaintiffs allege that the U.S. Parole Commission failed to provide information to the state of California when it transferred supervisory responsibilities in 1999.  2d Am. Compl. ¶ 72.  Plaintiffs' causation argument with respect to that claim is that "[t]he federal parole file contained material information that would have materially altered the way in which California parole authorities supervised Garrido.  Had California parole authorities had this information earlier, they would have rescued Plaintiffs many years earlier."  2d. Am. Compl. ¶ 74. In their Complaint, Plaintiffs cite 28 C.F.R. § 2.37-01(c).  That regulation, however, simply allows the Chief Probation Officer to release information concerning parolees "as deemed appropriate for the protection of the public."  *Id.*  Plaintiffs cannot cite any evidence in the record indicating that the United States failed to respond to requests for information by the state of California, and, in any event, the U.S. Probation Officers had no mandatory duty to provide such information to the state of California.  More importantly, even if such information were not disclosed, there is no evidence supporting the theory that Plaintiffs would have been rescued many years earlier if the U.S. Probation Office provided more information to the state of California.

## V.   PLAINTIFFS' SECOND AND FOURTH CLAIMS FOR RELIEF ARE BARRED BY THE MISREPRESENTATION EXCEPTION.

Claims arising out a failure to communicate information, either to a plaintiff directly or to a third person, fall within the misrepresentation exception to the FTCA.  28 U.S.C. § 2680(h).  The exception shields government employees from tort liability for claims based upon the failure to communicate information, whether such failure was negligent or intentional.  *See United States v. Neustadt*, 366 U.S. 696, 705–06 (1961).  The misrepresentation exception is broadly construed.  *Id.* at 702.  It applies even where the federal employees were under a specific statutory or regulatory duty to provide the information at issue.  *Id.* at  710–11; *see also OPM v. Richmond*, 496 U.S. 414 (1990).  In determining whether a claim is barred by the misrepresentation exception, the court must look beyond the language in which the complaint is couched and consider the "essence" or

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

"gravamen" of the suit.  *See Mt. Homes, Inc. v. United States*,  912 F.2d 352, 355 (9th Cir. 1990)

(quotations and citations omitted).  If the alleged misrepresentation is "essential" to the claim then

the action is barred even though there is some other alleged negligence by the government, for

example, in gathering the information that proves inaccurate.  *See Block v. Neal*, 460 U.S. 289, 297

(1983).  When government misinformation is at issue, plaintiff must allege injury independent of

that caused by the erroneous information.  *See Mt. Homes,* 912 F.2d at 355

The Ninth Circuit's decision in *Lawrence v. United States*, 340 F.3d 952 (9th Cir. 2003), is

directly on point.  There, a convicted felon sexually abused a minor while he was under the

supervision of the U.S. Probation Office and Marshals Service and was participating in the Federal

Witness Security Program.  The felon was allowed to work at a residential care facility for juveniles

and eventually became a foster parent.  The minor alleged that the felon was able to gain those

positions because federal employees provided incomplete information to the State.  The Ninth

Circuit affirmed the district court's dismissal of the action, not only based on the discretionary

function exception, but also on the misrepresentation exception:

> "In addition to the discretionary function exception, the district court held that the
> misrepresentation exception also applied to Plaintiff's claim that [federal employees] failed
> to provide [the state agency] with full, complete, and accurate information at the exemption
> hearing.  28 U.S.C. 2680(h).  The misrepresentation exception shields government
> employees from tort liability for failure to communicate information, whether negligent, or
> intentional.  Here, Plaintiff's claim was based on [the agents'] alleged failure to
> communicate certain information at the exemption hearing.

*Id.* at 958; *see also Doe v. Holy See*, 557 F.3d 1066, 1085 n.10 (9th Cir. 2009) ("In particular, we

have held that government officials' failure to warn about an individual's dangerousness, which

ultimately led to sexual abuse of a minor, comes within the misrepresentation exclusion.").

Here, Plaintiff's Second Claim for Relief is based on the Bureau of Prisons' failure to

provide information about Garrido to the U.S. Parole Commission.  2d Am. Compl. ¶ 61 ("[T]he

BOP did not provide the parole board with Garrido's complete records, and thus the parole board

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

did not consider the required records in determining whether to release Garrido on parole.").

Similarly, their Fourth Claim for Relief is based on the U.S. Probation Office's alleged failure to

communicate information to the state of California.  2d Am. Compl. ¶¶ 72 ("Defendant had an

affirmative, non-discretionary duty to provide information concerning Garrido to the state of

California.") & 73 (alleging that "Defendant did not provide the entire parole file on Garrido to the

state of California").  Irrespective of whether the U.S. Probation Office and the Bureau of Prison in

fact had any duty to provide the information at issue, *Neustadt*, 366 U.S. at 710–11, Plaintiffs'

claims are barred by the misrepresentation exception because they are based upon federal

employees' failure to communicate complete information.  *See Lawrence*, 340 F.3d at 958.

## VI.    PLAINTIFFS' CLAIMS ARE "FOREVER TIME-BARRED" UNDER 28 U.S.C. § 2401(B).

The FTCA provides that "[a] tort claim against the United States shall be forever barred

unless it is presented in writing to the appropriate Federal agency within two years after such claim

accrues."  28 U.S.C. § 2401(b); *Dyniewicz v. United States*, 742 F.2d 484, 485 (9th Cir. 1984).  This

limitations provision is a condition of the United States' waiver of sovereign immunity and should

be strictly construed in favor of the government.  *United States v. Kubrick,* 444 U.S. 111, 117–18

(1979) ("[T]he [FTCA] waives the immunity of the United States and . . . in construing the statute

of limitations, which is a condition of that waiver, we should not take it upon ourselves to extend the

waiver beyond that which Congress intended."); *Patterson v. United States*, 451 F.3d 268, 270 (1st

Cir. 2006) (stating that the FTCA's limitations provision is "strictly construed in the government's

favor").  An important purpose of the limitations provision is to protect the United States from

having to defend actions where the truth-finding process is impaired by the passage of time.

*Kubrick*, 444 U.S. at 117.

Plaintiffs filed their administrative claims on November 5, 2010.  (Ex. EE, Jaycee

Administrative Claim); (Ex. FF, A. Dugard Administrative Claim).  The relevant inquiry is thus

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

whether Plaintiffs' claims accrued before the "cutoff date" of November 5, 2008.  Because

Plaintiffs' claims accrued no later than May 1998, when Jaycee reached the age of majority,

Plaintiffs' claims are "forever time-barred" under § 1346(b).

### A.  Jaycee's Claims Are Time-Barred Because Both Her Mother and Jaycee Were Aware of Jaycee's Injury and Its Cause Years Before the Cutoff Date.

The FTCA's two-year time limit begins to run when the tort claim "accrues."  When a claim

accrues is determined by federal law.  *Washington v. United States*, 769 F.2d 1436, 1438 (9th Cir.

1985); *In re Swine Flu Prods. Liab. Litig.*, 764 F.2d 637, 638 (9th Cir. 1985).  "As a general rule, a

claim accrues 'when a plaintiff knows or has reason to know of the injury which is the basis of his

action.'"  *Hensley v. United States*, 531 F.3d 1052, 1056 (9th Cir. 2008) (quoting *Gibson v. United

States*, 781 F.2d 1334, 1344 (9th Cir. 1986)).  In *Kubrick*, the Supreme Court held that a cause of

action in a medical malpractice case under the FTCA accrues when "the plaintiff has discovered

both his injury and its cause."  444 U.S. at 120.  Applying *Kubrick*, the Ninth Circuit has held that

the "cause" is known to the plaintiff when the "immediate physical cause of the injury" is

discovered or could be discovered in the exercise of reasonable diligence.  *See Outman v. United

States*, 890 F.2d 1050 (9th Cir. 1989) (citing *Davis v. United States*, 642 F.2d 328, 331 (9th Cir.

1981), *cert. denied*, 455 U.S. 919 (1982)).  The knowledge sufficient to trigger accrual is measured

by an "objective standard."  *Herrera-Diaz v. U.S. Dep't of the Navy*, 845 F.2d 1534, 1537 (9th Cir.

1988).

In *Dyniewicz*, the plaintiffs were the estates and minor children whose parents "were killed

when a flood swept their car off a highway on the island of Hawaii."  742 F.2d at 485.  The

plaintiffs did not file their administrative claims until they learned that a federal employee may have

been involved.  They then brought FTCA claims against the United States, alleging that their

parents' deaths were caused by the National Park Service's negligent failure to close off the

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

highway.  *Id.*  The court dismissed the claims as untimely, explaining that the plaintiffs knew both the fact of injury (death of their parents) and its immediate physical cause (flooding) when their parents' bodies were found.  *Id.*

Similarly, in *Gibson v. United States*, 781 F.2d 1334 (9th Cir. 1986), the plaintiffs filed a claim with the FBI after discovering evidence suggesting the agency's involvement in a fire that burned down the plaintiffs' garage.  The Ninth Circuit held that the action was time-barred because it was filed six years after the destruction of the garage, the point at which the plaintiffs were aware of their injury (loss of their garage) and its immediate physical cause (the fire).  *Id.*

These cases make it clear that a plaintiff's "ignorance of the involvement of government employees is irrelevant to accrual of a federal tort claim."  *Hensley*, 531 F.3d at 1056 (citing *Dyniewicz*, 742 F.2d at 487); *Gibson*, 781 F.2d at 1344; *see also Davis*, 642 F.2d at 331; *accord Garza v. U.S. Bureau of Prisons*, 284 F.3d 930, 934 (8th Cir. 2002) (holding that the plaintiffs' claim accrued, at the latest, when he learned of the relationship between a halfway house and the Bureau of Prisons, not when he learned that an allegedly negligent employee worked for the Bureau of Prisons).  Further, where the undisputed facts show that a plaintiff was aware of the physical cause of his injury before the cutoff date, factors such as a plaintiff's alleged mental incompetence are irrelevant to the limitations inquiry.  *See Outman*, 890 F.2d at 1053; *Kubrick*, 444 U.S. at 121 (explaining that *Kubrick*'s "discovery rule" does not extend to protect a plaintiff who is ignorant of the medical significance of a known act or injury).  The Ninth Circuit has applied this rule in the context of a plaintiff who was in a coma as a result of the government's medical negligence, holding that the plaintiff's claim could not accrue where he was not "aware" of his injury at any point before a legal guardian was appointed to protect his interests.  *Washington*, 769 F.2d at 1439.

Finally, the date of accrual of a minor's claims is measured by the date on which the minor's parents first discovered or should have discovered the existence and immediate physical cause of the

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

minor's injuries.  *See Fernandez v. United States*, 673 F.2d 269, 271–72 (9th Cir. 1982) (concluding that the minor's claim accrued when his "parents knew, or had available the means of knowing" the fact of the injury and its immediate physical cause, and "declin[ing] to defer accrual of the claim until fault, as distinguished from injury and cause, is determined").  Thus, the knowledge of the parents is imputed to the minor.  *Landreth v. United States*, 850 F.2d 532, 534 (9th Cir. 1988) ("[A]ny knowledge [the minor's] parents had of [the minor's] injuries and the cause of her injuries is imputed to [the minor].");  *Zavala v. United States*, 876 F.2d 780, 782 (9th Cir. 1989) ("When the plaintiff is a minor, his parents' knowledge of the injuries is imputed to him.");  *see also Pittman v. United States*, 341 F.2d 739, 740 (9th Cir. 1973), *cert. denied* 382 U.S. 941 (1965).  The justification for this principal is that parents have a legal duty to file a claim on the minor's behalf.  *Landreth*, 850 F.2d at 534.

Here, Jaycee's mother knew of the heinous criminal act that caused her child's injuries on the very date that it occurred.  She learned from her a sheriff that her child had been kidnapped, (Ex. II, Probyn Dep. 82:2–83:17), and she knew that her husband had witnessed Jaycee's being grabbed and pulled into a car that "██████████████████."  (Ex. II, Probyn Dep. 86–87).  Thus, Jaycee's claim accrued no later than June 10, 1991, when her mother became aware of the fact of Jaycee's injury and its immediate physical cause.  *See Gibson*, 781 F.2d 1334; *Landreth*, 850 F.2d at 534.

But even if Jaycee's claim had not accrued immediately upon her kidnapping, the uncontroverted facts show that on May 3, 1998, the date she reached the age of majority, Jaycee herself was aware of sufficient information to trigger accrual of her First, Second, and Third Claims for Relief:  Jaycee was aware that she had been kidnapped and locked up in a shed in June 1991.  She knew of the immediate cause of her injury—Phillip Garrido's criminal acts—on the same date.  She remembers that Garrido explained to her in 1993 that "████████████████████

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

66

1    ███████████████████████████████████."  (Ex. GG, Jaycee Dep. 269:16–270:3).  She also knew

2    in 1993 that Garrido had returned from a month's imprisonment with "████████████████."  (Ex.

3    GG, Jaycee Dep. 269:6–12).

4         Jaycee's Fourth Claim for Relief accrued no later than 1999, when the United States

5    terminated Garrido's parole and California took him into state supervision.  Jaycee recalls Garrido

6    celebrating when he was going to be terminated from parole, and she remembers that "██████████

7    ████████████" later, she learned that "███████████████████████████████████████████

8    ███████████████████████████." (Ex. GG, Jaycee Dep. 273:3–274:5).  She admits that "████████

9    ████████████████████████████████████████████████████████████████████████████████

10   ████████████████████████████████████.'"  (Ex. HH, Pls.' Resp. to U.S.' 1st Set of

11   Interrogs. No. 11).

12

13        **B.     A. Dugard's Claims Are Time-Barred Because Her Mother Had Sufficient**
14             **Knowledge to Trigger Accrual of the Minor's Claims.**

15        A. Dugard's claims are also barred under the FTCA.  Jaycee's knowledge is imputed to A.

16   Dugard for purposes of accrual of A. Dugard's FTCA claims.  *Zavala*, 876 F.2d at 782; *see* cases

17   cited *supra* Part VI(A).  Jaycee knew in August 1994 that she had given birth to A. Dugard "in the

18   backyard, in the shed-like structures."  2d Am. Compl. ¶ 37.  She also knew that A. Dugard had

19   been fathered by Garrido.  Jaycee testified that although Garrido stopped locking her up "██████

20   █████████████████," she knew that she "█████████████████████."  (Ex. GG, Jaycee

21   Dep. 226:11–25).  She also testified that she knew that Garrido was on parole before A. Dugard was

22   born and that the "███████████████████████████████████████████."  (Ex. GG,

23   Jaycee Dep. 267:16–22).  Thus, A. Dugard had, from the moment her mother reached the age of

24   majority, a parent who "had both the duty to bring a claim and the knowledge necessary to pursue

25   it."  *Zavala*, 876 F.2d at 782.

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

**C.      Plaintiffs' Claims Are Not Subject to Tolling.**

The FTCA's limitations provision cannot be tolled for legal disabilities, *see Glenn v. United States*, 231 F.2d 884, 885–86 (9th Cir. 1956), or for equitable purposes.  *See Marley v. United States*, 567 F.3d 1030 (9th Cir. 2008) (holding that equitable tolling does not apply to the FTCA because the limitations provision of § 1346(b) is jurisdictional).  But even if equitable tolling were available under the FTCA, it could only apply "in situations where, despite all due diligence, [the party invoking equitable tolling] is unable to obtain vital information bearing on the existence of the claim," *Socop-Gonzalez v. INS,* 272 F.3d 1176, 1193 (9th Cir. 2001) (en banc) (alteration in original) (internal quotation marks omitted), or where the party invoking the doctrine "has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96 (1990); *see also Dyniewicz,* 742 F.2d at 487 (stating that equitable tolling would not apply in the absence of "fraudulent concealment" of information).  The doctrine does not apply "when a late filing is due to claimant's failure 'to exercise due diligence in preserving his legal rights.'"  *Scholar v. Pac. Bell,* 963 F.2d 264, 268 (9th Cir.1992) (quoting *Irwin,* 498 U.S. at 96).

*Alvarez-Machain v. United States*, 107 F.3d 696 (9th Cir. 2002), does not change this calculus.  There, the plaintiff was a foreign national abducted from Mexico by federal agents who tortured him and transported him to the United States, where he was criminally prosecuted for the murder of a DEA agent.  Following his acquittal three years after his abduction, Alvarez-Machain brought an FTCA action.  Despite Alvarez-Machain's filing of his claims after the expiration of the limitations period, the Ninth Circuit applied equitable tolling to permit his case to go forward. The court explained that because several of Alvarez-Machain's claims would not have accrued until he was acquitted, judicial economy counseled that the causes of action should not be split into multiple litigations.  *Id.* at 700–01.  Additionally, because agents of the United States held Alvarez-Machain

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

captive, he was prevented from asserting his claims due to "wrongful conduct on the part of the defendant." *Id.* (quoting *Seattle Audubon Soc. v. Robertson*, 931 F.2d 590, 595 (9th Cir. 1991), *rev. on other grounds*, 503 U.S. 429 (1992)).

Here, unlike in *Alvarez-Machain*, Garrido was not an agent of the United States, and therefore his actions are not attributable to the United States.  Moreover, notwithstanding the heinous criminal acts of Garrido, the evidence in the record demonstrates that Jaycee had the physical, practical, and legal ability to file an administrative claim long before the 2008 "cutoff date."  The undisputed facts show that, after she gave birth to her second daughter in November 1997, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, (Ex. GG, Jaycee Dep. 152:4–19), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  (Ex. GG, Jaycee Dep. 243:1–20). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Ex. GG, Jaycee Dep. 255:15–256:11). ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Ex. GG, Jaycee Dep. 249–256). ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Ex. GG, Jaycee Dep. 248:11–15).  On December 18, 2003, she wrote in her journal after watching a news report speculating that she had been killed, "Why can't they just leave it in the past?"  JAYCEE DUGARD, A STOLEN LIFE 181 (2011); *see also* (Ex. GG, Jaycee Dep. 254:16–21) (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮).[38]

---

[38] ▮▮▮▮▮▮▮▮▮▮ (Ex. KK, A. Dugard Dep. 106:23–25), ▮▮▮ ▮▮▮▮▮▮▮" (Ex. KK, A. Dugard Dep. 154:1–5); ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮," (Ex. KK, A. Dugard Dep. 151:18–25); ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮, (Ex. KK, A. Dugard Dep. 101:1–102:17); took hiking trips, (Ex. KK, A. Dugard Dep. 140:14–25); ▮▮▮▮

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

There is no evidence suggesting that Jaycee exercised due diligence in pursuing her claims, that she lacked vital information bearing on the existence of her claims, that the government defrauded her or tricked her into missing the filing deadline, that federal agents themselves participated in her kidnapping, or that filing her tort claims would have been futile as a matter of law.  Thus, even if equitable tolling were available under the FTCA—which it is not—it would not be available for Jaycee's claims.

Further, tolling would be unavailable for A. Dugard's claims.  Infancy does not toll the FTCA's statute of limitations.  *Landreth*, 850 F.2d at 534; *Mann v. United States*, 399 F.2d 672, 673 (9th Cir. 1968); *Brown v. United States*, 353 F.2d 578 (9th Cir. 1965).  The Ninth Circuit has held that there is no tolling for minority where the minor's only parent has abandoned the child and no legal guardian has been appointed during the two-year period following the injury.  *Zavala*, 876 F.2d at 780.  A minor is bound by her parent's failure to file a claim even where that failure results from the parent's ostensible conflict of interest, *Pittman*, 341 F.2d at 741–42, and even if the "the mother may have been contributively negligent" in causing the minor's injuries.  *Landreth*, 850 F.2d at 534.

## VII.   PLAINTIFFS FAILED TO SATISFY THE EXHAUSTION REQUIREMENT OF 28 U.S.C. § 2675(a) WITH RESPECT TO THEIR SECOND AND THIRD CLAIMS FOR RELIEF.

As a prerequisite to maintaining a suit under the FTCA, a plaintiff must first present an administrative claim to the appropriate federal agency.  *See* 28 U.S.C. § 2675(a).  The purpose of this "exhaustion requirement" is to give the relevant agency an opportunity to commence an investigation into the claim.  *Broudy v. United States*, 722 F.2d 566, 568 (9th Cir. 1983).  Plaintiffs have the burden of proving exhaustion.  *Vacek v. U.S. Postal Serv.*, 447 F.3d 1248, 1252 (9th Cir. 2006).

████████████████, (Ex. KK, A. Dugard Dep. 148:7–25); ██████████████████
████████████████ (Ex. KK, A. Dugard Dep. 149:1–4).

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

Plaintiffs' Second and Third Claims for Relief assert negligence on part of the Bureau of Prisons.  *See* 2d Am. Compl. ¶¶ 59–64; 65–70.  Plaintiffs, however, never filed an administrative claim with the Bureau of Prisons.  (Ex. LL, Decl. of Marli J.P. Kerrigan).  In the claims that they filed with the U.S. Parole Commission, Plaintiffs made no mention of the Bureau of Prisons or of the acts or omissions that form the basis of their second and third claims.[39]  Plaintiffs' Second and Third Claims for Relief are barred under the FTCA because Plaintiffs failed to exhaust their administrative remedies.  *See In re Consol. U.S. Atmospheric Testing Litig.*, 820 F.2d 982, 999 (9th Cir. 1987) ("Broudy's administrative claim was filed with the Department of Energy.  The Department of Defense controls the medical facility at El Toro.  The DOD received no notice of Broudy's claim." (parentheticals omitted)); *Slagle v. United States*, 612 F.2d 1157, 1159 n.5 (9th Cir. 1980); *Provancial v. United States*, 452 F.2d 72, 74–75 (11th Cir. 1972); *Acosta v. U.S. Marshals Serv.*, 445 F.3d 509, 513–14 (1st Cir. 2006); *Ames v. United States*, 600 F.2d 183, 185 n.4 (8th Cir. 1979).

## VIII.   PLAINTIFF A. DUGARD FAILS TO STATE ANY INJURY COGNIZABLE UNDER CALIFORNIA LAW.

Plaintiffs contend that, but for the United States' alleged negligence, Phillip Garrido "would not have been free to kidnap Jaycee in 1991 or otherwise cause injury to Plaintiffs."  ECF No. 65, 2d Am. Compl. ¶¶ 57, 63, 69.  A. Dugard's argument must be that, but for Defendant's negligence, Phillip Garrido would not have kidnapped and raped Jaycee and, consequently, she would never have been born.  California tort law, however, does not recognize wrongful-life claims by children born without any mental or physical impairment.[40]  *Alexandria S. v. Pac. Fertility Med. Ctr. Inc.*, 55

---

[39] Jaycee and her daughter A. Dugard each submitted an administrative claim to the U.S. Parole Commission in November 2010.  (Ex. EE, Jaycee Administrative Claim); (Ex. FF, A. Dugard Administrative Claim).

[40] In the medical malpractice arena, California recognizes a claim for wrongful life when "never being born, or nonexistence, is preferable to existence in the plaintiff's diseased state."  *Ermoian v. Desert Hosp.*, 152 Cal. App. 4th 475, 493 (Cal. App. 2007).

U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.

Cal. App. 4th 110 (1997).  "Courts have disallowed [wrongful life] actions based on a finding of no legally cognizable injury or no rationally ascertainable damages."  *Id.*  California jurisprudence embraces the philosophy that courts "cannot weigh the value of life with impairments against the nonexistence of life itself.  By asserting that he should not have been born, the infant plaintiff makes it logically impossible for a court to measure his alleged damages because of the impossibility of making the comparison required by compensatory remedies."  *Stills v. Gratton*, 55 Cal. App. 3d 698, 706 (1976) (quoting *Gleitman v. Cosgrove*, 227 A.2d 689, 693 (N.J. 1967)).  "The legal implications of such a tort are vast, the social impact could be staggering."  *Id.* at 705 (quoting *Zepeda v. Zepeda*, 190 N.E.2d 849, 858 (Ill.), *cert denied*, 379 U.S. 945 (1963)).

Courts have declined to recognize claims brought by children alleging that the defendant's negligent supervision and monitoring resulted in their mother's pregnancy.  In *Williams v. New York*, Lorene Williams was raped while a patient at a state hospital.  223 N.E.2d 343 (N.Y. 1966) (cited with approval by *Alexandria S. v. Pac. Fertility Med. Ctr. Inc.*, 55 Cal. App. 4th 110 (1997)).  Her child brought an action, alleging that the State was at fault for negligently "failing to provide adequate, sufficient and proper care and supervision over her while she was in custody of the State and in negligently failing to protect and safeguard her health and physical body from attack and harm from others."  *Id.* at 343.  The court dismissed the action: "If the pleaded facts are true, the State was grievously neglectful as to the mother, and as a result the child may have to bear unfair burdens as have many other sons and daughters of shame and sorrow.  But the law knows no cure or compensation for it, and the policy and social reasons against providing such compensation are at least as strong as those which might be thought to favor it."  *Id.* at 344.

Similarly, in *Foy v. Greenblott*, 141 Cal. App. 3d 1 (1983), a California court dismissed an action brought by a child alleging that a mental health facility negligently supervised his mother

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

while she was a patient, which led to her pregnancy.  The court held that no cause of action exists for the child under such circumstances absent physical or mental impairment.

Plaintiff A. Dugard may not characterize her claims as something other than claims for wrongful life in an attempt to circumvent California jurisprudence.  That tactic has been rejected by California courts: "Alexandria characterizes her claims as being for child support rather than for wrongful life; but whether she phrases her claim as denying her (1) a legal parent, (2) child support, or (3) any other attribute uniquely related to the parent/child relationship, the claim is akin to a wrongful life claim by a healthy child."  *Alexandria*, 55 Cal. App. 4th at 123.  Additionally, the court cited *Williams v. State* for the proposition that California jurisprudence does not recognize a tort for "deprivation of a legal parent."  55 Cal. App. 4th at 121.  The stigma of illegitimacy and the "deprivations of normal childhood" cannot form the basis of a cause of action.  *Id.*

Here, A. Dugard argues that Phillip Garrido should not have been free to kidnap Jaycee and father two children with her.  That is precisely the type of action not cognizable under California law.  A. Dugard cannot characterize her claims as something other than a wrongful-life action.  Her claims center on conduct that allegedly caused her birth; however, any conduct that occurred prior to August 1994 cannot form the basis of her claims.[41]

Moreover, A. Dugard's claim cannot stem from any perceived stigma or illegitimacy resulting from having Phillip Garrido as a father.  During her deposition, when asked about the harm she has suffered, A. Dugard answered, "█████████████████████████████████ ████████████████████████████████████████████."  (A. Dugard Dep. at 88:14–

---

[41]  In their Fourth Claim for Relief, Plaintiffs allege that the U.S. Parole Commission failed to provide information to the state of California when it transferred supervisory responsibilities in 1999.  2d. Am. Compl. ¶ 72.  Plaintiffs' causation argument with respect to that claim is that "[t]he federal parole file contained material information that would have materially altered the way in which California parole authorities supervised Garrido.  Had California parole authorities had this information earlier, they would have rescued Plaintiffs many years earlier."  2d. Am. Compl.  ¶ 74.  Any claim based on tortious conduct that occurred in 1999 (after A. Dugard's birth in August 1994), is barred by the misrepresentation exception to the FTCA.  *See infra* Part V.

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

16).  She continued by exclaiming, "█████████████████████████████████

███████████."  (A. Dugard Dep. at 89:19–20).  When discussing her familial status, A.

Dugard stated, "████████████████████████████████████████████████

████."  (A. Dugard Dep. at 90:12–14).

California does not recognize a cause of action for such injuries.  "[A] cause of action based

upon impairment of status—illegitimacy contrasted with legitimacy—should not be recognized at

law because a necessary element for the establishment of any cause of action in tort is missing,

*injury* and damages consequential to that injury."  *Curlender v. Bio-Science Labs.*, 106 Cal. App. 3d

811 (1980); *see also Alexandria*, 55 Cal. App. 4th at 123 (dismissing an action for deprivation of a

legal father); *cf. Zepeda*, 190 N.E.2d at 858 (refusing to acknowledge cause of action because "[o]ne

might seek damages . . . because a parent has an unsavory reputation").  Thus, as a matter of law, A.

Dugard cannot recover for any psychological injuries stemming from the fact that Phillip Garrido is

her father.

## CONCLUSION

For the reasons stated above, the United States respectfully requests that this Court grant the

**United States' Motion to Dismiss, for Judgment on the Pleadings, or for Summary Judgment.**

Date: August 1, 2013                          Respectfully submitted,
                                              Stuart Delery
                                              Principal Deputy Assistant Attorney General

                                              James G. Touhey, Jr.
                                              Director, Torts Branch

                                              Bridget Bailey Lipscomb
                                              Senior Trial Counsel

                                              Paul Stern
                                              Trial Attorney

                                              /s/ Deepthy Kishore
                                              Deepthy Kishore
                                              Trial Attorney

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**

Torts Branch, Civil Division
U.S. Department of Justice
Benjamin Franklin Station
P.O. Box 888
Washington, D.C. 20044
(202) 616-4448

Attorneys for Defendant
United States of America

## <u>CERTIFICATE OF SERVICE</u>

I, Deepthy Kishore, hereby certify that on August 1, 2013, I served a true copy

of the foregoing **United States' Motion to Dismiss, for Judgment on the Pleadings, or for**

**Summary Judgment** by electronic filing to all counsel of record, including:

Dale F. Kinsella
Kinsella, Weitzman, Iser, Kump & Aldisert, LLP
808 Wilshire Boulevard
Santa Monica, CA 90401
dkinsella@kwikalaw.com

<u>/s/ Deepthy Kishore</u>

DEEPTHY KISHORE

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Jaycee and A. Dugard,<br><br>          Plaintiffs,<br><br>          vs.<br><br>United States of America, and<br>Does 1-50, inclusive,<br><br>          Defendants. | CASE NO. CV-11-4718-CTB<br><br>**[PROPOSED] Order Granting United States' Motion to Dismiss, for Judgment on the Pleadings, or for Summary Judgment**<br><br>Date:<br>Time:<br>Crtrm.:<br>Hon. Carlos T. Bea |

      Having read the papers submitted in support of Defendant United States of America's Motion to Dismiss, for Judgment on the Pleadings, or for Summary Judgment, the Court hereby GRANTS Defendant's motion.

IT IS SO ORDERED.

DATED: _____            _____

                                                                    Hon. Carlos T. Bea, Circuit Judge

**U.S.' Mot. to Dismiss, J. on the Pleadings, or for Summ. J.**